# IRWIN *v.* DEPARTMENT OF VETERANS AFFAIRS
## ET AL.

No. 89–5867.   Argued October 1, 1990—Decided December 3, 1990

REHNQUIST, C. J., delivered the opinion of the Court, in which BLACK-MUN, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. WHITE, J., filed an opinion concurring in part and concurring in the judgment, in which MARSHALL, J., joined, *post*, p. 97. STEVENS, J., filed an opinion concurring in part and dissenting in part, *post*, p. 101. SOUTER, J., took no part in the consideration or decision of the case.

*Jon R. Ker*, by appointment of the Court, 494 U. S. 1025, argued the cause for petitioner. With him on the briefs was *Brian Serr*.

*Deputy Solicitor General Roberts* argued the cause for respondents. With him on the brief were *Solicitor General Starr*, *Assistant Attorney General Gerson*, and *Harriet S. Shapiro*.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In April 1986, petitioner, Shirley Irwin, was fired from his job by the Veterans' Administration (VA), which was subsequently redesignated as respondent Department of Veterans Affairs. Irwin contacted an equal employment opportunity

*Gregory O'Duden, Elaine Kaplan,* and *Kerry L. Adams* filed a brief for the National Treasury Employees Union as *amicus curiae* urging reversal.

counselor and filed a complaint with the VA, alleging that the VA had unlawfully discharged him on the basis of his race and physical disability. The VA dismissed Irwin's complaint, and the Equal Employment Opportunity Commission (EEOC) affirmed that decision by a letter dated March 19, 1987. The letter, which was sent to both Irwin and his attorney, expressly informed them that Irwin had the right to file a civil action under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.*, within 30 days of receipt of the EEOC notice. According to Irwin, he did not receive the EEOC's letter until April 7, 1987, and the letter to his attorney arrived at the attorney's office on March 23, 1987, while the attorney was out of the country. The attorney did not learn of the EEOC's action until his return on April 10, 1987.

Irwin filed a complaint in the United States District Court for the Western District of Texas on May 6, 1987, 44 days after the EEOC notice was received at his attorney's office, but 29 days after the date on which he claimed he received the letter. The complaint alleged that the VA discriminated against him because of his race, age, and handicap, in violation of 42 U. S. C. § 2000e *et seq.;* 81 Stat. 602, as amended, 29 U. S. C. § 621 *et seq.;* 87 Stat. 390, as amended, 29 U. S. C. § 791 *et seq.;* and the First and Fifth Amendments. Respondent VA moved to dismiss, asserting, *inter alia*, that the District Court lacked jurisdiction because the complaint was not filed within 30 days of the EEOC's decision as specified in 42 U. S. C. § 2000e–16(c). The District Court granted the motion.

The Court of Appeals for the Fifth Circuit affirmed. 874 F. 2d 1092 (1989). The court held that the 30-day period begins to run on the date that the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant, even if counsel himself did not actually receive notice until later. *Id.*, at 1094. The Court of Appeals further determined that the 30-day span allotted under § 2000e–

16(c) operates as an absolute jurisdictional limit.  *Id.*, at 1095.   Accordingly, it reasoned that the District Court could not excuse Irwin's late filing because federal courts lacked jurisdiction over his untimely claim.  *Ibid.*   That holding is in direct conflict with the decisions of four other Courts of Appeals.[1]

We granted certiorari to determine when the 30-day period under § 2000e–16(c) begins to run and to resolve the Circuit conflict over whether late-filed claims are jurisdictionally barred.   493 U. S. 1069 (1990).

Section 2000e–16(c) provides that an employment discrimination complaint against the Federal Government under Title VII must be filed "[w]ithin thirty days of receipt of notice of final action taken" by the EEOC.   The Court of Appeals determined that a notice of final action is "received" when the EEOC delivers its notice to a claimant or the claimant's attorney, whichever comes first.   *Id.*, at 1094.   Petitioner argues that the clock does not begin until the claimant himself has notice of his right to sue.

We conclude that Irwin's complaint filed in the District Court was untimely.   As the Court of Appeals observed, § 2000e–16(c) requires only that the EEOC notification letter be "received"; it does not specify receipt by the claimant rather than by the claimant's designated representative. There is no question but that petitioner appeared by his attorney in the EEOC proceeding.   Under our system of representative litigation, "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link* v. *Wabash R. Co.*, 370 U. S. 626, 634 (1962) (quoting *Smith* v. *Ayer*, 101 U. S. 320, 326 (1880)).   Congress has endorsed this sensible practice in the analogous provisions of

---

[1] See *Martinez* v. *Orr*, 738 F. 2d 1107 (CA10 1984); *Milam* v. *United States Postal Service*, 674 F. 2d 860 (CA11 1982); *Saltz* v. *Lehman*, 217 U. S. App. D. C. 354, 672 F. 2d 207 (1982); and *Boddy* v. *Dean*, 821 F. 2d 346, 350 (CA6 1987).

the Federal Rules of Civil Procedure, which provide that "[w]henever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party is ordered by the court." Fed. Rule Civ. Proc. 5(b). To read the term "receipt" to mean only "actual receipt by the claimant" would render the practice of notification through counsel a meaningless exercise. If Congress intends to depart from the common and established practice of providing notification through counsel, it must do so expressly. See *Decker* v. *Anheuser-Busch*, 632 F. 2d 1221, 1224 (CA5 1980).

We also reject Irwin's contention that there is a material difference between receipt by an attorney and receipt by that attorney's office for purposes of §2000e–16(c). The lower federal courts have consistently held that notice to an attorney's office which is acknowledged by a representative of that office qualifies as notice to the client. See *Ringgold* v. *National Maintenance Corp.*, 796 F. 2d 769 (CA5 1986); *Josiah-Faeduwor* v. *Communications Satellite Corp.*, 251 U. S. App. D. C. 346, 785 F. 2d 344 (1986). Federal Rule of Civil Procedure 5(b) also permits notice to a litigant to be made by delivery of papers to the litigant's attorney's office. The practical effect of a contrary rule would be to encourage factual disputes about when actual notice was received, and thereby create uncertainty in an area of the law where certainty is much to be desired.

The fact that petitioner did not strictly comply with §2000e–16(c)'s filing deadline does not, however, end our inquiry. Petitioner contends that even if he failed to timely file, his error may be excused under equitable tolling principles. The Court of Appeals rejected this argument on the ground that the filing period contained in §2000e–16(c) is jurisdictional, and therefore the District Court lacked authority to consider his equitable claims. The court reasoned that §2000e–16(c) applies to suits against the Federal Govern-

ment and thus is a condition of Congress' waiver of sovereign immunity. Since waivers of sovereign immunity are traditionally construed narrowly, the court determined that strict compliance with § 2000e–16(c) is a necessary predicate to a Title VII suit.

Respondents correctly observe that § 2000e–16(c) is a condition to the waiver of sovereign immunity and thus must be strictly construed. See *Library of Congress* v. *Shaw*, 478 U. S. 310 (1986). But our previous cases dealing with the effect of time limits in suits against the Government have not been entirely consistent, even though the cases may be distinguished on their facts. In *United States* v. *Locke*, 471 U. S. 84, 94, n. 10 (1985), we stated that we were leaving open the general question whether principles of equitable tolling, waiver, and estoppel apply against the Government when it involves a statutory filing deadline. But, as JUSTICE WHITE points out in his concurrence, *post*, at 99, nearly 30 years earlier in *Soriano* v. *United States*, 352 U. S. 270 (1957), we held the petitioner's claim to be jurisdictionally barred, saying that "Congress was entitled to assume that the limitation period it prescribed meant just that period and no more." *Id.*, at 276. More recently, in *Bowen* v. *City of New York*, 476 U. S. 467, 479 (1986), we explained that "we must be careful not to 'assume the authority to narrow the waiver that Congress intended,' or construe the waiver 'unduly restrictively'" (citation omitted).

Title 42 U. S. C. § 2000e–16(c) provides in relevant part:

> "Within thirty days of receipt of notice of final action taken by . . . the Equal Employment Opportunity Commission . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title . . . ."

The phraseology of this particular statutory time limit is probably very similar to some other statutory limitations on

suits against the Government, but probably not to all of them. In the present statute, Congress said that "[w]ithin thirty days . . . an employee . . . may file a civil action . . . ." In *Soriano, supra,* at 271, n. 1, Congress provided that "[e]very claim . . . shall be barred unless the petition . . . is filed . . . within six years . . . ." An argument can undoubtedly be made that the latter language is more stringent than the former, but we are not persuaded that the difference between them is enough to manifest a different congressional intent with respect to the availability of equitable tolling. Thus a continuing effort on our part to decide each case on an ad hoc basis, as we appear to have done in the past, would have the disadvantage of continuing unpredictability without the corresponding advantage of greater fidelity to the intent of Congress. We think that this case affords us an opportunity to adopt a more general rule to govern the applicability of equitable tolling in suits against the Government.

Time requirements in lawsuits between private litigants are customarily subject to "equitable tolling," *Hallstrom* v. *Tillamook County,* 493 U. S. 20, 27 (1989). Indeed, we have held that the statutory time limits applicable to lawsuits against private employers under Title VII are subject to equitable tolling.[2]

A waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed.'" *United States* v. *Mitchell,* 445 U. S. 535, 538 (1980) (quoting *United States* v. *King,* 395 U. S. 1, 4 (1969)). Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver. Such a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation. We therefore hold that the same rebuttable presumption of equitable

---

[2] See *Zipes* v. *Trans World Airlines, Inc.,* 455 U. S. 385, 394 (1982); *Crown, Cork & Seal Co.* v. *Parker,* 462 U. S. 345, 349, n. 3 (1983).

tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so.

But an examination of the cases in which we have applied the equitable tolling doctrine as between private litigants affords petitioner little help. Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period,[3] or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.[4] We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Baldwin County Welcome Center* v. *Brown*, 466 U. S. 147, 151 (1984). Because the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity, it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants.

Petitioner urges that his failure to file in a timely manner should be excused because his lawyer was absent from his office at the time that the EEOC notice was received, and that he thereafter filed within 30 days of the day on which he personally received notice. But the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect.

The judgment of the Court of Appeals is accordingly

*Affirmed.*

---

[3] See *Burnett* v. *New York Central R. Co.*, 380 U. S. 424 (1965) (plaintiff timely filed complaint in wrong court); *Herb* v. *Pitcairn*, 325 U. S. 77 (1945) (same); *American Pipe & Construction Co.* v. *Utah*, 414 U. S. 538 (1974) (plaintiff's timely filing of a defective class action tolled the limitations period as to the individual claims of purported class members).

[4] See *Glus* v. *Brooklyn Eastern Dist. Terminal*, 359 U. S. 231 (1959) (adversary's misrepresentation caused plaintiff to let filing period lapse); *Holmberg* v. *Armbrecht*, 327 U. S. 392 (1946) (same).

JUSTICE SOUTER took no part in the consideration or decision of this case.

JUSTICE WHITE, with whom JUSTICE MARSHALL joins, concurring in part and concurring in the judgment.

Although I agree with the Court that the 30-day period under 42 U. S. C. § 2000e–16(c) begins to run when the notice from the Equal Employment Opportunity Commission is delivered either to the claimant or the claimant's attorney, I do not join the portion of the opinion holding that the 30-day time period is subject to equitable tolling, see *ante*, at 93–96.

As the Court recognizes, see *ante*, at 94, statutory deadlines for suits against the Government, such as the one in this case, are conditions on the Government's waiver of sovereign immunity. See, *e. g.*, *United States* v. *Mottaz*, 476 U. S. 834, 841 (1986); *United States* v. *Kubrick*, 444 U. S. 111, 117–118 (1979). As such, they must be "'strictly observed and exceptions thereto are not to be implied.'" *Lehman* v. *Nakshian*, 453 U. S. 156, 161 (1981) (quoting *Soriano* v. *United States*, 352 U. S. 270, 276 (1957)); see also *Block* v. *North Dakota ex rel. Bd. of Univ. and School Lands*, 461 U. S. 273, 287 (1983). In my view, the Court has failed to "strictly observe" the terms of the statute at issue in this case.

Congress did not expressly provide for equitable tolling of the 30-day filing deadline in § 2000e–16(c). The Court, however, holds that like statutes of limitations for suits between private litigants, limitations periods for suits against the Government will now *presumptively* be subject to equitable tolling. *Ante*, at 95–96. That holding needlessly reverses at least one of this Court's prior decisions and is in tension with several others.

Because of the existence of sovereign immunity, we have traditionally held that the Government's consent to be sued "'cannot be implied but must be unequivocally expressed.'" *United States* v. *Mitchell*, 445 U. S. 535, 538 (1980) (quoting *United States* v. *King*, 395 U. S. 1, 4 (1969)). That rule applies even where there is a contrary presumption for suits

against private defendants. Our decision in *Library of Congress* v. *Shaw*, 478 U. S. 310 (1986), is instructive on this point. There, we held that the Government was not liable under the federal provisions of Title VII for interest. In reaching that conclusion, we reaffirmed the longstanding rule that despite consent to be sued, the Government will not be liable for interest unless there is a separate explicit waiver to that effect. *Id.*, at 316–317. Although the statute in that case provided that the Government was to be liable "the same as a private person" for "costs," including a "reasonable attorney's fee," we stated that "we must construe waivers strictly in favor of the sovereign . . . and not enlarge the waiver 'beyond what the language requires.'" *Id.*, at 318 (citations omitted). It seems to me that the Court in this case, by holding that the time limit in § 2000e–16(c) is subject to equitable tolling, has done exactly what *Shaw* proscribes — it has enlarged the waiver in § 2000e–16(c) beyond what the language of that section requires.[1]

Not only is the Court's holding inconsistent with our traditional approach to cases involving sovereign immunity, it directly overrules a prior decision by this Court, *Soriano* v. *United States*, 352 U. S. 270 (1957). The question in *Soriano* was whether war tolled the statute of limitations for claims against the Government filed in the Court of Claims. In arguing for equitable tolling, the plaintiff there relied on a case in which this Court had held that war had tolled a limitations statute for purposes of private causes of action. *Id.*, at

---

[1] The Court's failure to recognize the importance of sovereign immunity in statutory construction also ignores *Brown* v. *GSA*, 425 U. S. 820 (1976). In that case, we held that Title VII provisions for federal employees pre-empt other remedies for discrimination in federal employment. We reached that conclusion despite our earlier holding in *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454 (1975), that Title VII provisions for private employees did not pre-empt other discrimination remedies. We found *Johnson* to be "inapposite" because, among other things, "there were no problems of sovereign immunity in the context of the *Johnson* case." 425 U. S., at 833.

275. The Court was not persuaded, stating that "[t]hat case involved private citizens, not the Government. It has no applicability to claims against the sovereign." *Ibid.* The Court explained:

> "To permit the application of the doctrine urged by petitioner would impose the tolling of the statute in every time-limit-consent Act passed by the Congress. . . . Strangely enough, Congress would be required to provide expressly in each statute that the period of limitation was not to be extended by war. But Congress was entitled to assume that the limitation period it prescribed meant just that period and no more. With this intent in mind, Congress has passed specific legislation each time it has seen fit to toll such statutes of limitations because of war. And this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Id.*, at 275–276 (footnote omitted).

As in *Soriano*, here Congress "was entitled to assume that the limitation period it prescribed [in § 2000e–16(c)] meant just that period and no more."

The Court deviates from the above cases because it believes that our decisions concerning time requirements "have not been entirely consistent." *Ante*, at 94.[2] Even if that belief is well founded, the doctrine of *stare decisis* demands that we attempt to reconcile our prior decisions rather than

---

[2] The Court also asserts that allowing equitable tolling against the Government "is likely to be a realistic assessment of legislative intent." *Ante*, at 95. It is unclear, however, why that likelihood, rather than the opposite, is true. The statute here, for example, was enacted in 1972 when the presumption was, as set forth in *Soriano* v. *United States*, 352 U. S. 270 (1957), that statutes of limitations for suits against the Government were *not* subject to equitable tolling. It is unlikely that the 1972 Congress had in mind the Court's present departure from that longstanding rule.

hastily overrule some of them.[3]   Such an attempt would reveal that *Bowen* v. *City of New York*, 476 U. S. 467 (1986), cited by the Court for the alleged inconsistency, see *ante*, at 94, is not irreconcilable with the cases discussed above.   In *Bowen*, we allowed equitable tolling against the Government because, among other things, the statutory time period there, set forth in 42 U. S. C. § 405(g), expressly allowed tolling. Section 405(g) requires that a civil action be filed "within sixty days . . . *or within such further time as the Secretary may allow.*"   See 476 U. S., at 472, n. 3 (emphasis added). We noted that the provision in that section allowing the Secretary of Health and Human Services to extend the filing deadline expressed Congress' "clear intention to allow tolling in some cases."   *Id.*, at 480.   Moreover, we observed that the regulations promulgated by the Secretary governing extensions of time under that provision were based on equitable concerns of fairness to claimants, further "support[ing] our application of equitable tolling."   *Id.*, at 480, n. 12.   The statute in this case, unlike the one in *Bowen*, does not manifest any "clear intention" by Congress to allow tolling and thus should be subject to the rule articulated in *Soriano*, *supra.*

Accordingly, I concur in the judgment because I do not believe that equitable tolling is available as a defense to the 30-day filing requirement, and I would not reach the factual issue whether equitable tolling is supported by the circumstances of this case.

---

[3] *Stare decisis* is "of fundamental importance to the rule of law," *Welch* v. *Texas Dept. of Highways and Public Transportation*, 483 U. S. 468, 494 (1987), because, among other things, it promotes stability and protects expectations.   *Vasquez* v. *Hillery*, 474 U. S. 254, 265–266 (1986).   Although always an important guiding principle, it has "special force" in cases such as this one that involve statutory interpretation because Congress is in a position to overrule our decision if it so chooses.   *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 172–173 (1989).

JUSTICE STEVENS, concurring in part and dissenting in part.

While I agree with the Court's conclusion that the filing deadline in 42 U. S. C. § 2000e–16(c) is subject to equitable tolling and that the petitioner has failed to establish a basis for tolling in this case, I do not agree that the 30-day limitations period began to run when petitioner's lawyer, rather than petitioner himself, received notice from the EEOC of petitioner's right to file a civil action.

The Court is entirely correct that notice to a litigant's attorney is generally considered notice to the litigant *after* litigation has been commenced. See *ante,* at 92–93. But the Court overlooks the fact that litigation is usually commenced by service of process on the adverse party himself. Indeed, the Federal Rules of Civil Procedure expressly require service on the opposing litigant. See Fed. Rule Civ. Proc. 4(d). This case involves a notice that is a condition precedent to the commencement of formal litigation. I therefore believe that Congress intended that this notice, like a summons and complaint, be served on the adverse party, not his representative.

The Court contends that reading "the term 'receipt' [in § 2000e–16(c)] to mean only 'actual receipt by the claimant' would render the practice of notification through counsel a meaningless exercise." *Ante,* at 93. By the same logic, however, reading "receipt," as the Court does, to mean only "receipt by the claimant's representative" renders "a meaningless exercise" the EEOC's practice of notifying the claimant personally, a practice codified in EEOC regulations, see 29 CFR § 1613.234(a) (1990). Actually, notifying both the claimant and his representative makes sense regardless of which notice begins the ticking of the limitations clock. Dual notification ensures that all persons concerned with the progress of the action are apprised of important developments. Cf. *ibid.* (also requiring notification of employing agency). However, a claimant's representative before the

EEOC will not necessarily also represent the claimant in the ensuing civil suit; indeed, the representative in the administrative proceedings need not even be an attorney. See § 1613.214(b). Notice to the claimant is therefore the more logical trigger for the limitations countdown. This construction is not only sensible in light of the notice requirement's function in the statutory scheme, but is also consistent with our previous admonitions that Title VII, a remedial statute, should be construed in favor of those whom the legislation was designed to protect. See *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 397–398 (1982); *Love* v. *Pullman Co.*, 404 U. S. 522, 527 (1972).

Accordingly, I respectfully dissent from the Court's judgment. I would instead reverse the judgment of the Court of Appeals and remand the case for resolution of the disputed factual issue of when the petitioner himself actually received notice from the EEOC of his right to file a civil action.