**POTTAWATOMI NATION IN CANADA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 90–3897L.**

United States Court of Federal Claims.

Dec. 14, 1992.

Henry J. Sockbeson, Washington, DC, for plaintiff. Peg Rogers, of counsel.

Andrew M. Eschen, U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION

HODGES, Judge.

This case comes before the court on plaintiff's motion for reconsideration. We conclude that plaintiff's claim is time barred.

## FACTS

The Pottawatomi Nation in Canada (Pottawatomi), a tribe of Native Americans currently residing in communities surrounding Lakes Huron, Erie, and Ontario in Canada, seeks monetary damages from the United States for alleged breach of fiduciary and statutory duties arising from a series of treaties between 1795 and 1833. By these treaties, the United States agreed to make annual payments in perpetuity and furnish other consideration to the Pottawatomies now living in United States. In return, the Pottawatomies ceded aboriginal rights to vast amounts of land surrounding the Great Lakes region, and agreed to move west of the Mississippi River within three years.

Plaintiff's ancestors, who were part of a group known as the Wisconsin Band, did not move west after the treaties were signed. The Band did not receive treaty annuities from the United States after 1838 because federal authorities stopped distributing funds to those Pottawatomies who refused to move west of the Mississippi River and to those who moved to Canada. Those who moved to Canada are the plaintiff in this case.

The Secretary of the Interior ruled that the Wisconsin Band forfeited its annuities by not moving. Congress rejected this view, however, and appropriated $10,000 for the Band in 1864. The United States Treasury was directed to maintain the unpaid annuities for the Wisconsin Band's credit until it moved west.

The Wisconsin Band petitioned Congress for its unpaid annuities in 1903. Congress instructed the Secretary of the Interior to investigate the claims and identify the amount retained in the Treasury to the Band's credit pursuant to the 1864 Act. If none were retained, the Secretary was to determine the amount that should have been retained. In 1908, Congress accepted the Secretary's investigative report which found that defendant owed the Wisconsin Band in United States $447,339. No funds were appropriated for the Pottawatomies living in Canada.

The American and Canadian Pottawatomies filed claims with the Indian Claims Commission (ICC) in 1948, to recover the remainder of the unpaid annuities. *Hannahville Indian Community v. United States*, No. 28 (Ind.Cl.Comm. filed May 4, 1948). The ICC dismissed the claims of the Pottawatomies residing in Canada on the ground that the ICC had no jurisdiction to determine the claims of Indians residing outside the territorial limits of the United States. The Canadian Pottawatomies filed a petition for appeal with the ICC in March 1949, but moved to dismiss their appeal on January 3, 1950. *Hannahville Indian Community v. United States*, 115 Ct.Cl. 823 (1950).

The Pottawatomies in the United States filed an amended petition with the ICC in 1951, identifying themselves as those Pottawatomies "whose places of abode are in Michigan and Wisconsin." Their case was transferred from the ICC to the United States Court of Claims in 1978. *Hannahville Indian Community v. United States*, 41 Ind.Cl.Comm. 304 (1978). The Claims Court acquired the case in 1982, and entered judgment for the Pottawatomies residing in the United States in 1983. *Hannahville Indian Community v. United States*, 4 Cl.Ct. 445 (1983). The Claims Court expressly excluded the Canadian Pottawatomies from its decision and stated that they were not involved in those proceedings. *Id.* at 456.

The Pottawatomies residing in the United States appealed this decision to the Court of Appeals for the Federal Circuit, arguing that the lower court's findings on the amount of damages were incomplete. The Federal Circuit affirmed the Claims Court's decision on damages, and the United States Supreme Court denied certiorari. *Hannahville Indian Community v. United States*, 4 Cl.Ct. 445·(1983), *aff'd*, 732 F.2d 167 (Fed.Cir.) (Table), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

In 1984, the *Hannahville* plaintiff filed a motion to reopen the judgment to allow disbursement of a proportionate share of the Claims Court award to the Pottawatomies living in Canada. The motion was denied by this court in an unpublished Order on November 1, 1984. In 1988, Congress approved a plan developed by the Secretary of the Interior to distribute the judgment awarded in *Hannahville* to the Pottawatomies residing in the United States.

The Canadian Pottawatomies filed this suit on October 31,·1990 under the Tucker Act, 28 U.S.C. § 1491 (1988), requesting unpaid treaty annuities from 1838, interest, damages, costs of the action, and attorney fees. We granted defendant's motion to dismiss because plaintiff did not bring its suit within the six years prescribed by 28 U.S.C. § 2501 (1988). Plaintiff requested reconsideration on the grounds that the statute of limitations was equitably tolled until 1985.

## DISCUSSION

Plaintiff asserts that the statute of limitations did not begin to run until 1985 because 28 U.S.C. § 2502 precluded it from filing a claim until then. Section 2502(a) provides:

> Citizens or subjects of any foreign government which accords to citizens of the United States the right to prosecute claims against their government in its courts may sue the United States in the United States Claims Court if the subject matter of the suit is otherwise within such court's jurisdiction.

28 U.S.C. § 2502 (1988). The statute denies consent to an alien to sue the United States in this court if citizens of the United States are not accorded the reciprocal right to sue the alien's sovereign. *Aktiebolaget Imo-Industri v. United States*, 54 F.Supp. 844, 848, 101 Ct.Cl. 483 (1944).

Section 2502 prevents an alien plaintiff from maintaining a suit against the United States in this court unless the plaintiff affirmatively shows the requisite reciprocity. *See, e.g., Nippon Hodo Company v. United States*, 285 F.2d 766, 776–77, 152 Ct.Cl. 190 (1961). In this case, plaintiff uses section 2502 as a defense to the six-year statute of limitations on actions in this court. Plaintiff relies on the

notion that the absence of reciprocity tolled the statute of limitations. We are aware of no case in which such an argument has been considered.

To prevail, plaintiff must show both that having no right to sue the United States in this court tolls our statute of limitations, and that Canada did not extend to Americans the right to sue Canada more than six years prior to the time plaintiff filed its claim. We are not persuaded that plaintiff has made such a showing.

## I.

Our statute of limitations contains a tolling provision; it states, "the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases." 28 U.S.C. § 2501 (1988). Historically, the tolling provision applied to certain people who could not bring lawsuits on their own behalf and to those who could not file a claim from overseas. *Webb v. United States*, 21 Cl.Ct. 137, 141 (1990). Use of the phrase "legal disability" in section 2501 was "intended to consolidate by substitution the prior archaic terminology"; it was not intended to be a change in the law. *Goewey v. United States*, 612 F.2d 539, 543–44, 222 Ct.Cl. 104 (1979).

However, in *Compania Maritima v. United States*, 145 F.Supp. 935, 940, 136 Ct.Cl. 697 (1956), the Court of Claims concluded that the plaintiff was under a legal disability during the time that the Trading with the Enemy Act of 1917 prohibited it from filing any lawsuits in the courts of the United States. Under section 2501, therefore, plaintiff had three years from the time the prohibition ended in which to file its suit. *Compania Maritima*, 145 F.Supp. at 940.

Plaintiff cited *Compania Maritima* for the proposition that a statute precluding the filing of a suit tolls the statute of limitations for bringing that suit. However, plaintiff apparently disregards the remaining holding of that case: section 2501 provides one who is under a legal disability at the time a claim accrues three years to file that claim after the disability ends.

We suppose that plaintiff cites only part of the holding because applying the tolling provision of section 2501 does not make plaintiff's claim timely.

According to plaintiff's theory of the case, the legal disability ended in 1985. If we were to accept the argument that *Compania Maritima* controls this case, plaintiff's claim still would be untimely because it was brought in 1990, more than three years after plaintiff asserts the disability ended. Under section 2501, plaintiff should have filed its claim by 1988.

*Compania Maritima* held that the inability to use the courts of the United States—*i.e.*, having no physical access to United States courts—constituted a legal disability. We do not address the distinct issue of whether having no *right* to sue the United States in this court also constitutes a legal disability as that term is used in section 2501. Neither party advanced an argument on this distinction, if any.

Plaintiff avoids the limited extension of time provided in section 2501 by relying on the doctrine of equitable tolling. The Supreme Court recently held that the doctrine applies in suits brought against the United States in the same manner that it applies to suits between private parties. *Irwin v. Veterans Administration*, 498 U.S. 89, 94–95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). However, the Court noted that "[f]ederal courts have typically extended the equitable relief only sparingly." *Irwin*, 498 U.S. at 96, 111 S.Ct. at 457.

Plaintiff essentially argues that having no right to sue the United States equitably tolls the statute of limitations for bringing a suit against the United States. No cases are cited for this proposition. We are skeptical of this argument for a number of reasons, including its evident illogic.

We held previously that plaintiff's claim accrued no later than 1948. *Pottawatomi Nation in Canada v. United States*, No. 90–3897L, slip op. at 6 (Cl.Ct. May 21, 1992). Even if the doctrine of equitable tolling could be applied to the facts in this case, plaintiff has not shown that it was precluded from filing suit before 1985.

## II.

Plaintiff asserts that it could not have brought its claim before 1985 because "a similarly situated American tribe could not successfully sue Canada in Canadian courts for a treaty violation before 1985." We find no support in the law for the novel assertion that section 2502 creates a legal disability or otherwise tolls the statute unless a similarly situated American plaintiff could prevail on a similar claim against the alien's sovereign.

■ Section 2502 requires the foreign government to accord "citizens of the United States the right to prosecute claims against [that] government." 28 U.S.C. § 2502. As the term is used in section 2502, "claims" does not mean " 'claims of the precise nature brought before this court.' The section contemplates only that American citizens enjoy an equal standing with foreigners in actions against the foreign State and does not require that the scope of actions for which the respective countries render themselves liable to suit shall be coextensively identical and *in pari materia.*" *Nippon Hodo Company,* 285 F.2d at 767–68.

Plaintiff does not dispute that American citizens had the right to sue the government of Canada more than six years before plaintiff filed its claim. Rather, plaintiff asserts that Canadian law historically has treated Indians differently from non-Indians, and as a result Indians "have had a difficult time bringing actions against Canada in a Canadian court." Plaintiff further asserts that before 1985 "American Indians who had claims under a Canadian treaty would have found it impossible to successfully bring the claim." For that reason, plaintiff argues, this court would not have permitted plaintiff to bring its claim before 1985.

Plaintiff relies upon a passage from *Nippon Hodo:*

> Perhaps there is some minimum amount of sovereign-liability in his own country which must be proved by an alien wishing to sue our Government in this court. We would carefully measure the scope of our jurisdiction in a situation where a

rule in a foreign law book permits Americans free access to the courts but where it appears in practice that Americans are barred from the courts.

*Nippon Hodo,* 285 F.2d at 768. Plaintiff interprets this passage to mean that we must consider how receptive the Canadian courts would have been to a treaty claim brought by an American Indian.

We do not agree with plaintiff's interpretation. First, the court in *Nippon Hodo* was concerned that a foreign government's waiver of immunity for American citizens may be illusory. No consideration was given to whether a waiver of sovereign immunity applied uniformly to all claims or whether any particular kind of claim would likely succeed. Second, plaintiff's theory would impose upon an alien suing the United States the arduous task of persuading the court that an American citizen could prevail on a similar claim against the alien's sovereign. This would be a difficult standard for our courts to address, particularly if a similar claim had never been brought against the alien's sovereign.

Finally, plaintiff states that if we are not persuaded by its interpretation of *Nippon Hodo,* we should change the law. That is, we should apply the law as plaintiff believes it should be, not as we think it is. We leave such policy considerations to Congress.

## CONCLUSION

Plaintiff's motion for reconsideration is DENIED.