**Marcia Ellen BUNNEY, Petitioner–Appellant,**

v.

**Gwendolyn MITCHELL,\* Warden of the Central California Women's Facility, Respondent–Appellee.**

No. 00–15432.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 2001

Filed March 5, 2001

---

\* Gwendolyn Mitchell is substituted for her predecessor, as Warden of the Central California Women's Facility. Fed. R.App. P. 43(c)(2).

Michael Satris, Bolinas, California, for the petitioner-appellant.

Martin S. Kaye, Deputy Attorney General, San Francisco, California, for the respondent-appellee.

Before: GOODWIN, GRABER and PAEZ, Circuit Judges.

GRABER, Circuit Judge:

In 1982, Petitioner Marcia Ellen Bunney was convicted of first-degree murder in California. On September 4, 1997, she filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court dismissed the petition as untimely. Petitioner appeals, and we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Petitioner shot and killed her ex-boyfriend, Ted DuBois. She was indicted on a charge of first-degree murder, waived her right to a jury trial, and was tried before the court. She alleged at trial that, because of her mental condition, she was unable to premeditate, deliberate, or harbor malice. She presented expert testimony about her mental condition; the government presented expert testimony in response. On May 25, 1982, the court found Petitioner guilty of first-degree murder and imposed a sentence of between 25 years and life in prison. Petitioner appealed to the California Court of Appeal, which affirmed her conviction on September 4, 1984.

In October 1995, Petitioner retained her present counsel in preparation for a March 1996 parole hearing. Counsel interviewed Petitioner and reviewed her prison mental health file and the transcript of her trial. Counsel then retained the services of Dr. Daniel Sonkin, a psychotherapist and expert on domestic violence. After interviewing Petitioner and reviewing her psychological reports from the time of trial, Sonkin concluded that Petitioner had suffered from Battered Women's Syndrome (BWS) at the time she killed DuBois. At Petitioner's March 21, 1996, parole hearing, counsel relied on Sonkin's diagnosis of BWS, but the parole board denied parole nonetheless.

On February 14, 1997, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. That motion was denied on May 28, 1997.

On September 4, 1997, Petitioner filed a petition for writ of habeas corpus in the district court, pursuant to 28 U.S.C. § 2254. In her petition, she claimed that (1) her trial counsel was ineffective for failing to investigate or present expert testimony about BWS; and (2) in view of Sonkin's diagnosis of BWS, she was entitled to a new trial.

The district court issued an order in which it (1) noted that the petition appeared to be untimely under the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA); and (2) directed the government to bring a motion to dismiss the petition as untimely or, alternatively, to explain why such a motion was unwarranted. The government filed a motion to dismiss; Petitioner filed an opposition.

The district court granted the government's motion to dismiss. After requesting and receiving a certificate of appealability from the district court, Petitioner timely appealed.

## STANDARD OF REVIEW

 This court reviews de novo a district court's dismissal, on statute-of-limitations grounds, of a petition for writ of habeas corpus. *Miles v. Prunty,* 187 F.3d 1104, 1105 (9th Cir.1999). This court also reviews de novo a district court's decision on the issue of equitable tolling. *Id.*

## DISCUSSION

I. *Background*

Because Petitioner filed her petition in district court after the effective date of AEDPA, the provisions of that statute apply in this case. *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). AEDPA contains a one-year statute of limitations for petitions for writs of habeas corpus:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

 For prisoners like Petitioner, whose convictions became final before AEDPA was enacted, that one-year limitation period began to run on the statute's effective date, April 24, 1996, and expired on April 23, 1997, unless it was tolled. *Saffold v. Newland,* 224 F.3d 1087, 1088 (9th Cir.2000).

In dismissing the petition as untimely, the district court concluded that (1) in Petitioner's case, AEDPA's one-year statute of limitations began to run on April 24, 1996, and ended on April 23, 1997; (2) Petitioner filed her petition on September 4, 1997, 134 days after the statute of limitations had expired; (3) under 28 U.S.C. § 2244(d)(2), the statute of limitations was tolled for the 103–day period between the date on which Petitioner filed her state-court habeas petition (February 14, 1997) and the date on which the state supreme court denied that petition (May 28, 1997); and (4) despite that 103–day period of tolling, the petition was still 31 days late.

Petitioner argues that her petition was timely for three reasons. We will address her arguments in turn.

II. *Petitioner was aware of the "factual predicate" of her claim more than one year before she filed her petition.*

■ First, Petitioner argues that her petition is timely because the statute of limitations actually did not begin to run on April 24, 1996. Relying on 28 U.S.C. § 2244(d)(1)(D), she contends that the statute of limitations began to run only in January 1997. Subsection (d)(1)(D) provides that the statute of limitations does not begin to run until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." According to Petitioner, she was not aware of the "factual predicate" of her claims until January 1997, when "counsel's investigation had uncovered the facts underlying Petitioner's application for relief *and evidence which made her claim credible.*" (Emphasis added.)

The Fifth Circuit rejected that approach in *Flanagan v. Johnson,* 154 F.3d 196, 198–99 (5th Cir.1998). In that case, the petitioner argued that his trial counsel had been ineffective for failing to inform him that he did not have to testify at his 1989 trial. The petitioner neglected to file his federal habeas petition within AEDPA's one-year statute of limitations. However, he argued that he was unaware of the "factual predicate" of his claim until November 1996, when he obtained an affidavit from his trial counsel, in which counsel stated that he did not remember whether he had discussed with the petitioner the concept that the petitioner could refuse to testify.

In rejecting the petitioner's argument, the Fifth Circuit concluded that he was aware of the factual predicate of his claim—"the fact that he was called to testify and did not know he had the right to refuse"—long before he had obtained trial counsel's affidavit. *Id.* at 199. By focusing on the affidavit, rather than on his knowledge of the facts underlying his claim, the petitioner was "confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim. Trial counsel's affidavit neither change[d] the character of [the] claim nor provide[d] any new ground for [the] petition." *Id.*

■ As in *Flanagan,* Petitioner's argument in this case conflates her knowledge of the "factual predicate" of a claim with the development of sufficient evidentiary support to prove the claim. But the text of AEDPA answers Petitioner's argument; under subsection (d)(1)(D), the statute of limitations begins to run when a petitioner knows (or should know through the exercise of due diligence) *the facts* on which a claim is predicated, without reference to when (or if) she can muster evidence sufficient to prove that claim.

By March 1996, Petitioner knew enough facts to tell a state parole board (1) that she had suffered from BWS when she killed DuBois, having been beaten by her father, her ex-husband, and an ex-boyfriend (not DuBois); and (2) that her condition was not investigated or revealed at trial. That is the precise factual predicate of her habeas claim. Accordingly, the district court did not err in holding that the statute of limitations began to run on April 24, 1996.

III. *The district court did not err in refusing to toll the statute of limitations for the period during which Petitioner could have sought certiorari.*

■ Second, Petitioner argues that, although she did not petition the United States Supreme Court for a writ of certiorari, the district court nevertheless should have tolled the statute of limitations during the 90–day period in which she could have done so. Petitioner relies on the AEDPA provision that tolls the statute of limitations while "a properly filed application for State post-conviction or other collateral review … is pending." 28 U.S.C. § 2244(d)(2).

This court has not addressed the issue of whether § 2244(d)(2) tolls the statute of

limitations for the 90–day period during which a party may petition for certiorari following the denial of a state-court petition. All other circuit courts that have considered the issue have rejected the argument Petitioner makes here. *See Isham v. Randle,* 226 F.3d 691, 695 (6th Cir.2000); *Coates v. Byrd,* 211 F.3d 1225, 1227 (11th Cir.2000); *Ott v. Johnson,* 192 F.3d 510, 513 (5th Cir.1999), *cert. denied,* 529 U.S. 1099, 120 S.Ct. 1834, 146 L.Ed.2d 777 (2000); *Rhine v. Boone,* 182 F.3d 1153, 1155 (10th Cir.1999), *cert. denied,* 528 U.S. 1084, 120 S.Ct. 808, 145 L.Ed.2d 681 (2000).[1]

Consistent with those cases, we conclude that the statute of limitations was not tolled. AEDPA provides that the limitation period is tolled while "a properly filed application for State post-conviction or other collateral review ... is pending." 28 U.S.C. § 2244(d)(2). This court has held that the word "State" modifies both the phrase "post-conviction review" and the phrase "other collateral review." *Jiminez v. Rice,* 222 F.3d 1210, 1213 (9th Cir.2000). A petition for certiorari in the United States Supreme Court is not "State post-conviction ... review" or "other [State] collateral review." *See, e.g., Isham,* 226 F.3d at 695 (so stating). Thus, by its plain terms, 28 U.S.C. § 2244(d)(2) does not toll the limitation period while a petition for certiorari from a state court's denial of a petition for post-conviction relief is pending in the United States Supreme Court.

Further, in 28 U.S.C. § 2244(d)(1)(A), Congress expressly considered the time within which a party could petition for certiorari following the denial of a *direct appeal.* That subsection provides that the statute of limitations begins to run on "the date on which the judgment became final by the conclusion of direct review *or the expiration of the time for seeking such review.*" (Emphasis added.) This court

has held that, under subsection (d)(1)(A), the limitation period does not begin to run until after the United States Supreme Court has denied review or, if no petition for certiorari is filed, until after the time for filing such a petition has expired. *Bowen v. Roe,* 188 F.3d 1157, 1159 (9th Cir.1999). But Congress did not include anything comparable to the phrase "or the expiration of the time for seeking such review" in the subsection that applies to state post-conviction petitions. Rather, as noted, that subsection tolls the limitation period only while such state-court petitions are pending. Congress' decision to include that wording in 28 U.S.C. § 2244(d)(1)(A), while omitting it from 28 U.S.C. § 2244(d)(2), further supports our conclusion that Congress did not intend to toll AEDPA's statute of limitations in these circumstances. *Accord Ott,* 192 F.3d at 513 (so stating); *see also Lucht v. Molalla River Sch. Dist.,* 225 F.3d 1023, 1027 (9th Cir.2000) (stating proposition that Congress' inclusion of a particular phrase in one section of a statute but not in another section of the same statute is presumed to reflect Congress' intent to differentiate the two).

In summary, the district court did not err in holding that the statute of limitations was not tolled for the period during which Petitioner could have sought certiorari in the United States Supreme Court.

IV. *The district court did not err in refusing to toll the statute of limitations on equitable grounds.*

 Finally, Petitioner argues that her failure to file in a timely manner should be excused under the doctrine of equitable tolling. AEDPA's statute of limitations may be equitably tolled only "if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file

---

1. The Seventh Circuit also recently held that the statute of limitations was not tolled during that 90–day period. *See Gutierrez v. Schomig,* 233 F.3d 490, 492 (7th Cir.2000). However, the Seventh Circuit based its ruling on the fact that the petitioner there (like Petitioner in

this case) had not filed a petition for certiorari. The court declined to address the larger question whether the statute of limitations would be tolled in a case in which a petitioner actually filed a petition for certiorari.

a petition on time." *Calderon v. United States Dist. Ct.*, 128 F.3d 1283, 1288 (9th Cir.1997), *quoted in Calderon v. United States Dist. Ct.*, 163 F.3d 530, 541 (9th Cir.1998) (en banc). The doctrine does not extend to "garden variety claim[s] of excusable neglect." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (refusing to equitably toll the statute of limitations in a case in which untimely filing was due to counsel's absence from the office).

Petitioner argues that her counsel's failure to file in a timely manner constituted the "extraordinary circumstance" beyond her control. Petitioner acknowledges that she was aware of the statutory deadline and discussed it with her counsel, but states that she relied on counsel to comply with the deadline. Counsel's negligence certainly was regrettable, but it was not extraordinary. In these circumstances, equitable tolling does not apply.

Other circuit courts faced with similar facts uniformly have refused to toll AEDPA's statute of limitations on equitable grounds. *See Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir.2000) (refusing to equitably toll the statute of limitations based on a lawyer's mistake); *Harris v. Hutchinson*, 209 F.3d 325, 330–31 (4th Cir. 2000) (same); *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir.1999) (same); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir.1999) (same result under 28 U.S.C. § 2255). This case is unfortunate but commonplace; counsel negligently failed to comply with a statute of limitations of which he and Petitioner both were aware. We conclude that the district court did not err in refusing to toll the statute of limitations on equitable grounds.

AFFIRMED.