**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FLYING PHOENIX CORPORATION,

    Plaintiff - Appellant,

v.

CREATIVE PACKAGING
MACHINERY, INC.,

    Defendant,

and

NORTH PARK TRANSPORTATION
COMPANY; R&L CARRIERS
SHARED SERVICES, LLC,

    Defendants - Appellees.

No. 11-8077

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 2:11-CV-00119-NDF)**

---

John Schumacher of White & White, P.C., Riverton, Wyoming, for Plaintiff - Appellant.

Paula Fleck of Holland & Hart, LLP (and Jonathan James Wylie of Wylie Law Firm, LLC, on the brief), Jackson, Wyoming, for Defendants - Appellees.

---

Before **KELLY**, **EBEL**, and **HOLMES**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Plaintiff-Appellant Flying Phoenix Corporation ("Flying Phoenix") appeals from the district court's dismissal of its claims against North Park Transportation Company and R&L Carriers Shared Services ("the carriers"), with prejudice, for lack of subject matter jurisdiction. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

Flying Phoenix Corporation, a Wyoming corporation in the business of importing and reselling fireworks, purchased a machine designed to package fireworks for sale to end users from Creative Packaging Machinery, Inc., a North Carolina corporation. Aplt. App. 5, 6.[1] Flying Phoenix previously purchased a different machine from Creative Packaging, and that machine arrived in satisfactory condition. Id. at 6. The second machine, however, arrived severely damaged: "the junction box was damaged, the breaker was destroyed, the frame was bent underneath, the dolly wheels were broken, the main frame was bent, and there were various scratches on the machine." Id. at 8.

Creative Packaging was responsible for shipping the second machine to

---

[1] All facts in the Background section are taken from Flying Phoenix's original complaint.

Flying Phoenix. Id. at 6. To do so, Creative Packaging contracted with R&L Carriers Shared Services, an Ohio domestic limited liability company, to have the machine shipped from North Carolina to Wyoming. Id. at 5-6. A bill of lading issued for the shipment listed Creative Packaging as shipper, R&L Carriers as carrier, and Flying Phoenix as consignee. Id. at 6-7. Importantly, the bill of lading limited the period for filing claims with a carrier to nine months, and limited the time for filing civil suit to two years and one day following denial of a claim. Id. at 29, 31-32. At some point during the delivery, R&L Carriers transferred the machine to North Park Transportation Company to complete delivery to Flying Phoenix. Id. 7. North Park delivered the machine to Flying Phoenix on April 9, 2007. Id.

Three days after the machine was delivered, Flying Phoenix filed a claim with North Park based on damage to the machine. Id. Roughly two weeks later, North Park inspected the machine and confirmed that it was damaged. Id. A little less than a month later, North Park and R&L Carriers notified Flying Phoenix that its claim was denied, citing evidence that the shipment was issued with insufficient packaging or protection. Id. Flying Phoenix renewed its claim approximately six months later, in November 2007, and the carriers again denied the claim—this time, asserting that the machine was "used" and inadequately packaged. Id.

Flying Phoenix filed suit against Creative Packaging,[2] R&L Carriers, and North Park in federal district court on April 1, 2011, id. at 4—almost four years after its initial claim was denied in May 2007, and nearly two years after the limitations period for filing civil suit expired. Flying Phoenix asserted a claim under the Carmack Amendment, 49 U.S.C. § 14706, as well as several state-law claims. Id. at 8-12. The district court found that Flying Phoenix's negligence claim was preempted by the Carmack Amendment, id. at 67-69, and dismissed the remainder of Flying Phoenix's suit under Federal Rule of Civil Procedure 12(b)(6), id. at 69-71. Specifically, the district court held that Flying Phoenix's remaining claims were brought pursuant to the bill of lading and were time-barred by the limitations period contained therein. Id. Flying Phoenix unsuccessfully sought reconsideration, arguing that its claims were independent of the bill of lading. Id. at 73-78, 87-91.

On appeal, Flying Phoenix argues that the district court erred by holding that (1) its claims were based on the bill of lading, and (2) it was bound by the terms of the bill of lading even though it was not a party and did not consent.[3] Flying Phoenix acknowledges that a bill of lading existed for the shipment, but urges that (1) it was not a party to that bill of lading (but instead was listed as

---

[2] The manufacturer is listed as a defendant and appellee, but has had no involvement in the present case. Aplt. Br. 4 n.1.

[3] Flying Phoenix does not appeal the district court's conclusion that its state-law claims were preempted. Aplt. Br. 7.

consignee by someone else), and (2) it had no knowledge of the bill of lading until shortly before the present lawsuit was filed.

## Discussion

This appeal presents two questions: whether the Carmack Amendment creates a cause of action independent of a bill of lading, and whether a non-party consignee may be bound by the terms of a bill of lading. In considering these questions, we review the district court's dismissal for lack of subject matter jurisdiction de novo. Wyoming v. U.S. Dep't of Interior, 674 F.3d 1220, 1231 (10th Cir. 2012). We address these questions narrowly, and our analysis is specific to the facts of this case.

The Carmack Amendment, 49 U.S.C. § 14706, does not create a cause of action independent of a bill of lading when a bill of lading exists. The Carmack Amendment states, in relevant part:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

49 U.S.C. § 14706(a)(1). The Carmack Amendment also enables parties to contract for limitations periods as short as nine months for filing initial claims, and two years from denial of those claims for filing any subsequent civil suit. Id.

-5-

§ 14706(e)(1).  Flying Phoenix's argument relies upon the last quoted sentence, concerning the legal import of failing to issue a receipt or bill of lading. According to Flying Phoenix, that provision allows a party to bring suit independent of a bill of lading, even if a bill of lading exists.  We disagree, and read that sentence as simply precluding a defense: a carrier may not escape liability by failing to issue a receipt or bill of lading.  As a practical matter, a carrier's failure to issue a bill of lading only precludes the carrier from contracting for limitations periods in line with § 14706(e)(1).  Thus, the Carmack Amendment does not create an independent cause of action for recovery where a receipt or bill of lading issued, and Flying Phoenix does not dispute that a bill of lading was issued in this case.

Separately, Flying Phoenix is bound to the terms of the bill of lading on the facts of this case.  As the Carmack Amendment does not create an independent cause of action, there is no means *other than* the bill of lading by which Flying Phoenix may recover against the carriers.  By suing under the bill of lading, Flying Phoenix must accept the terms of the bill of lading in at least two ways. First, as a third-party beneficiary, stepping into the shoes of the manufacturer-shipper, Flying Phoenix takes on the rights *and limitations* of the manufacturer-shipper under the bill of lading—one limitation being a time limit for filing civil suits.  Second, Flying Phoenix is deemed to have accepted the terms of the bill of lading by suing under it.  See, e.g., Mitsui & Co. (USA), Inc. v. Mira M/V, 111

F.3d 33, 36-37 (5th Cir. 1997).

Finally, Flying Phoenix claims that, although it was listed as consignee on the bill of lading, it never saw the bill of lading until after the limitations period lapsed. It argues that, since it did not know the terms of the carriage, it should not be bound. We find no precedent for Flying Phoenix's position, and Flying Phoenix has not directed us to any. There is no suggestion in the record that Flying Phoenix ever sought a copy of the bill of lading but was denied access, and it is well-established that a party may not sit idly by, making no effort to obtain obviously necessary documents, and then claim ignorance. Lack of diligence precludes equitable intervention. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) ("[T]he principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect."); Sigala v. Bravo, 656 F.3d 1125, 1128 (10th Cir. 2011) (same).

AFFIRMED.