SUTTON, Circuit Judge, concurring.
I join Judge Guy's well-reasoned opinion in full. I write separately to emphasize the propriety of holding parties accountable for their lawyers' actions.
*841 Our system of representative litigation makes the parties principals, the lawyers agents. See Restatement (Third) of Agency § 1.01 reporter's note c (Am. Law Inst. 2006); Restatement (Third) of the Law Governing Lawyers § 26 cmt. b (Am. Law Inst. 2000); William A. Gregory, The Law of Agency and Partnership § 21 (3d ed. 2001). Under tried and true agency principles, parties become bound by the actions of lawyers taken with actual or apparent authority. Restatement (Third) of Agency §§ 2.01 - .03 ; Restatement (Third) of the Law Governing Lawyers §§ 26 - 27. That understanding has deep roots, centuries-deep roots, in the common law. The thirteenth-century jurist Henry de Bracton wrote that "the attorney represents the person of his lord in almost all matters." 4 Bracton, On the Laws and Customs of England 85 (George E. Woodbine ed., Samuel E. Thorne trans., 1977). By Justice Oliver Wendell Holmes' time, the idea had become cliché, the well-worn adage being that the "act of the attorney is the act of his client." Oliver Wendell Holmes, Jr., Agency , 5 Harv. L. Rev. 1, 7-8 (1891) (quotation omitted).
This representative ideal pervades every aspect of our modern legal system. We stylize our cases as contests of "Plaintiff v. Defendant" even though the combatants who appear behind the lectern are lawyers, not parties. We write that "plaintiff argues so-and-so," full well knowing that the client often hasn't the foggiest about the obscure arguments his lawyer just submitted on his behalf. The concept even suffuses our vocabulary. The word attorney means one who is attorned-in other words, a person appointed to act for another. 1 Oxford English Dictionary 772 (2d ed. 1989). Trying to pry apart a lawyer's representational actions from those of his client is like trying to separate Mark Twain from Samuel Clemens.
One implication of this foundational principle is that parties must be held accountable for their attorneys' misconduct. That's why there is "certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." Link v. Wabash R.R. Co. , 370 U.S. 626, 633-34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). "Any other notion," the Court added, "would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." Id. at 634, 82 S.Ct. 1386 (quotation omitted). In the past fifty years, the Court has hammered the point over and over. See Maples v. Thomas , 565 U.S. 266, 280-81, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012) ; Pioneer Inv. Servs. Co. v. Brunswick Assocs ., 507 U.S. 380, 396-37, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ; Irwin v. Dep't of Veterans Affairs , 498 U.S. 89, 92-93, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) ; United States v. Boyle , 469 U.S. 241, 249-50, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985).
Even so, our circuit remains queasy about Link 's iron-clad logic in sanction cases like this one. Reasoning that dismissal with prejudice unfairly punishes a plaintiff for his lawyer's misdeeds, we have "expressed an extreme reluctance to uphold the dismissal of a case merely to discipline a party's attorney." Mulbah v. Detroit Bd. of Educ. , 261 F.3d 586, 590 (6th Cir. 2001) ; see also Patterson v. Grand Blanc Twp. , 760 F.2d 686, 688 (6th Cir. 1985) (per curiam). So it is that "[d]ismissal is usually inappropriate where the neglect is solely the fault of the attorney."
*842 Carpenter v. City of Flint , 723 F.3d 700, 704 (6th Cir. 2013) (quotation omitted).
This sentiment is unfair to the defendant, is inconsistent with other areas of the law, and may do more harm than good for the party it tries to help: the plaintiff. Why should a defendant be made to endure abuses by a plaintiff's lawyer just because the plaintiff was unaware? That is not the way we usually think about it. See Link , 370 U.S. at 634 n.10, 82 S.Ct. 1386. Our anxiety about harming blameless plaintiffs also breaks sharply from our usual practices. When a plaintiff loses his case because his lawyer filed the complaint outside the statute of limitations, we rarely pause to ask whether the client was responsible for the delay. See, e.g. , Rocheleau v. Elder Living Constr., LLC , 814 F.3d 398, 400-01 (6th Cir. 2016). In that situation, we treat the lawyer's actions as those of his client, no matter how steep the cost.
The law already marks a deeply grooved path for addressing the grievances of clients bilked out of good claims by bad lawyers. It's called a malpractice lawsuit. See Link , 370 U.S. at 634 n.10, 82 S.Ct. 1386 ; Inman v. Am. Home Furniture Placement, Inc. , 120 F.3d 117, 119 (8th Cir. 1997). A dismissal with prejudice predicated on lawyer misconduct would provide powerful ammunition for a client in a malpractice proceeding. See Restatement (Third) of the Law Governing Lawyers § 53 cmt. b. By departing from our traditional rules of agency to protect plaintiffs, we may do just the opposite. If we make party misconduct a near precondition in every dismissal, we unduly complicate the inevitable malpractice action by giving the lawyer a ready defense: My client behaved just as badly as I did. See Carpenter , 723 F.3d at 704.
Left to my own devices, I would take a different tack. While a party's conduct may enter the equation in determining whether to dismiss the case with prejudice as a sanction, we should not make it a near precondition for doing so.