SLIP OP. 03-123

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: RICHARD K. EATON, JUDGE

————————————————————————

SARA FERNANDEZ, MARISELA QUINTERO
& ROSA SCHMIDT, FORMER EMPLOYEES OF
CONNOLLY NORTH AMERICA,

     PLAINTIFFS,

  V.

ELAINE CHAO, SECRETARY OF LABOR,

     DEFENDANT.

————————————————————————

COURT NO. 02-00183

[Plaintiffs' motion to amend complaint denied; defendant's motion to dismiss granted.]

Dated: September 17, 2003

*Texas Rural Legal Aid, Inc.* (*Carmen E. Rodriguez*), for plaintiffs.

 *Peter D. Keisler*, Assistant Attorney General, United States Department of Justice; *David M. Cohen*, Director, Commercial Division, Civil Division; *Patricia M. McCarthy*, Assistant Director, International Trade Section (*Delfa Castillo*); *Gary E. Bernstecker*, Office of the Solicitor, Division of Employment & Training Legal Services, United States Department of Labor, of counsel, for defendant.

MEMORANDUM OPINION

EATON, *Judge*: Before the court are Sara Fernandez, Marisela Quintero, and Rosa Schmidt's

("Plaintiffs") Motion for Leave to File Second Amended Complaint ("Mot. Leave File") and, on

behalf of the United States Department of Labor ("Labor"), the United States' ("Government")

Motion to Dismiss ("Mot. Dismiss"). By their motion Plaintiffs seek to amend the Complaint

filed with this court on February 22, 2002, to include allegations relating to events that occurred

subsequent to its filing.  Specifically, Plaintiffs seek to include the determination contained in the

Notice of Negative Determination Regarding Application for Reconsideration, Pub. R. at 32

("Negative Determination Regarding Application for Reconsideration"), by which Labor denied

reconsideration of its Negative Determination Regarding Eligibility To Apply for NAFTA-

Transitional Adjustment Assistance, Pub. R. at 21 ("Negative Determination").  In the Negative

Determination Labor found Plaintiffs to be ineligible for North American Free Trade Agreement

Transitional Adjustment Assistance ("NAFTA-TAA") benefits.[1]  By its motion the Government

asks that this matter be dismissed for lack of subject matter jurisdiction.  The court has

jurisdiction to review Labor's final determinations with respect to eligibility for NAFTA-TAA

benefits pursuant to 28 U.S.C. § 1581(d)(1) (2000) and 19 U.S.C. § 2395(a) (2000).[2]  For the

---

[1]        Attached to the Complaint are copies of Plaintiffs' petitions for Trade Adjustment Assistance ("TAA") benefits and NAFTA-TAA benefits.  *See* Compl. Attach.; *see also* Neg. Determination, Pub. R. at 22 ("A petition for Trade Adjustment Assistance has been filed on behalf of workers at the subject firm (TA-W-40,121).").  Labor denied Plaintiffs' TAA petition on December 18, 2001.  *See* Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, 66 Fed. Reg. 65,220, 65,220 (Dep't Labor, Dec. 18, 2001) (notice).  By their filings in the instant action Plaintiffs nowhere allege that they requested administrative review of the negative TAA determination, or that they are now requesting judicial review of that determination.  *See* Compl. ¶ 1 ("This action is brought to appeal . . . Labor's determination denying eligibility to apply for NAFTA-TAA worker adjustment assistance.").

[2]        At the time Plaintiffs filed their initial petition for certification of benefits in early October 2001, the governing statute was 19 U.S.C. § 2331 (2000).  This statute has since been repealed and reenacted as part of the TAA statute by the "Trade Adjustment Assistance Reform Act of 2002."  *See* Trade Act of 2002, Pub. L. 107-210, 116 Stat. 993 (Aug. 6, 2002); *Former Employees of Rohm & Haas Co. v. Chao*, 27 CIT __, __ n.1, 246 F. Supp. 2d 1339, 1342 n.1 (2003).  The provisions of the amended trade act became effective on November 4, 2002.  *See* *Rohm & Hass*, 27 CIT at __ n.1, 246 F. Supp. 2d at 1342 n.1 (citing Trade Act of 2002 § 151).  Here, as Plaintiffs filed their petition for NAFTA-TAA benefits prior to the effective date of the

(continued...)

reasons set forth below, the court denies Plaintiffs motion to amend the Complaint and grants the Government's motion to dismiss.

BACKGROUND

Plaintiffs are former employees of Connolly North America, LLC ("Connolly"), who were employed by that firm at a plant in El Paso, Texas (the "El Paso plant"), to make leather products for automobiles. *See* Pet. NAFTA-TAA, Pub. R. at 2.[3] On or about September 7, 2001, Connolly closed the El Paso plant and Plaintiffs were separated from their employment. *See id.*

On September 18, 2001, Plaintiffs, proceeding *pro se*, petitioned Labor seeking certification of eligibility for NAFTA-TAA benefits. *See* Pet. NAFTA-TAA, Pub. R. at 2. On November 6, Labor gave notice that it was commencing an investigation of Plaintiffs' petition. *See* Investigations Regarding Certifications of Eligibility To Apply for NAFTA Transitional Adjustment Assistance, 66 Fed. Reg. 56,127 (Dep't Labor Nov. 6, 2001) (notice). At the conclusion of its investigation, Labor determined that Plaintiffs did not meet the eligibility requirements to receive NAFTA-TAA benefits. *See* Neg. Determination, Pub. R. at 22 (finding that although "[s]ales, production and employment at the subject firm declined during the

---

[2](...continued)
Trade Adjustment Assistance Reform Act of 2002, 19 U.S.C. § 2331 controls this matter. *See id.*, 27 CIT at __ n.1, 246 F. Supp. 2d at 1342 n.1 ("Because the plaintiffs' petition antecedes November 4, 2002, the effective date of this amendment, they cannot benefit from the more generous terms of the revised statute." (citation omitted)).

[3]        According to the record, the El Paso plant was established at the request of a "major customer" specifically to provide services for that customer. *See* Conf. R. at 14.

relevant period," Connolly "did not shift production to Mexico or Canada, nor did it increase imports from Canada or Mexico of leather and leather products."). Plaintiffs were informed of Labor's determination by letter dated November 21, and Labor published notice of its decision in the Federal Register on November 30. *See* letters from Labor to Plaintiffs of 11/21/01, Pub. R. at 26–29; Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, 66 Fed. Reg. 59,816, 59,817 (Dep't Labor Nov. 30, 2001) (notice). By regulation, Plaintiffs then had thirty days from publication of the Notice of Negative Determination, or until December 30, to file a request for administrative reconsideration of the Negative Determination with Labor. *See* 29 C.F.R. § 90.18(a) (2001).

On December 4, Plaintiffs, continuing to proceed *pro se*, timely filed for administrative reconsideration of the Negative Determination by mailing an application for reconsideration to Labor. *See* letter from Plaintiffs to Labor of 12/4/01, Pub. R. at 30 ("Application for Reconsideration"). Plaintiffs' request for reconsideration was based on their allegation that "a major customer . . . switch[ed its] purchases of leather and leather products from the subject firm in favor of producing the products at the customer's affiliated location in Mexico." Eng. Trans. of Application for Recons., Pub. R. at 31.

At some point after mailing the Application for Reconsideration, Plaintiffs obtained counsel. *See* Pls.' Resp. Sec'y Labor's Mot. Dismiss ("Pls.' Resp.") ¶ 3; Mot. Appear *Pro Hac Vice* (Feb. 22, 2002). On February 22, 2002, prior to Labor issuing the Negative Determination Regarding Application for Reconsideration, Plaintiffs, with the assistance of counsel, filed the

Complaint.  *See generally* Compl.  By their Complaint, Plaintiffs asked this Court to review the

Negative Determination even though the administrative review of that determination, requested

by Plaintiffs, was still pending.  *See id.* at 1.

Thereafter, on March 20, Plaintiffs, by their counsel, sought to amend the Complaint

solely for the purpose of correcting the caption.  *See* Mot. Leave File ¶ 5.  The amendment was

made in accordance with the Clerk of the Court's instructions.  *See id.*

On April 15, some 132 days following Plaintiffs' mailing of the Application for

Reconsideration, and at least 68 days after Labor received it, Labor denied Plaintiffs' application,

finding no error or misinterpretation of the law or facts that would justify reconsideration of the

Negative Determination.  *See* Neg. Determination Regarding Application for Recons., Pub. R. at

32.[4]  In support of its determination Labor stated that

> [the] petitioner requested administrative reconsideration based on a
> major customer switching their purchases of leather and leather
> products from the subject firm in favor of producing the products
> at the customer's affiliated location in Mexico.
>
> Based on data supplied during the initial investigation, the
> allegation by the petitioner is consistent with [the information] the

---

[4]        By regulation, Labor is to make a determination on an application for
reconsideration within fifteen days of receiving it.  The regulation provides, in pertinent part, that
"[n]ot later than fifteen (15) days after receipt of the application for reconsideration, the
certifying officer shall make and issue a determination granting or denying reconsideration."  29
C.F.R. § 90.18(c).  Furthermore, in the event of a negative determination, "the certifying officer
shall issue a negative determination regarding the application and shall promptly publish in the
FEDERAL REGISTER a summary of the determination, including the reasons therefore."  *Id.* §
90.18(e). Here, however, although Plaintiffs mailed the Application for Reconsideration in early
December 2001, apparently Labor did not come into possession of it until February 6, 2002.

> subject firm provided.  The loss of a customer and the decision by
> the customer to produce the leather and leather products in Mexico
> and the further processing of these products into car seat
> components in Mexico does not meet the eligibility requirements
> of the group eligibility requirements of paragraph (a)(1) of [19
> U.S.C. § 2331].

*Id.*, Pub. R. at 33.  In addition, Labor determined that the El Paso plant was not a "secondarily

impacted" company.  *See* Neg. Finding Regarding Qualification as a Secondary Firm Pursuant to

the Statement of Admin. Action Accompanying the N. Am. Free Trade Agreement (NAFTA)

Implementation Act, Pub. R. at 36; *see* Connolly N. Am., El Paso, Tx., 67 Fed. Reg. 35,157

(Dep't Labor May 17, 2002) (negative finding of secondary firm) ("Secondary Determination")

(citing Statement of Admin. Action accompanying the North Am. Free Trade Agreement

(NAFTA) Implementation Act, H.R. Doc. No. 103-159 at 225 (1993) ("SAA")).[5]

---

[5]        According to Labor, the SAA authorizes it to determine whether a firm is
"secondarily impacted."  *See* Secondary Determination, 67 Fed. Reg. at 35,157; *see also* SAA at
225 ("Assistance to Workers in Secondary Firms").  Labor states that, to be secondarily
impacted, a firm must meet the following criteria:

> (1) The subject firm must be a supplier of a firm that is directly
> affected by imports from Mexico or Canada or shifts in production
> to those countries; or
>
> (2) The subject firm must assemble or finish products made by a
> directly-impacted firm; and
>
> (3) The loss of business with the directly-affected firm must have
> contributed importantly to worker separations at the subject firm.

Secondary Determination, 67 Fed. Reg. at 35,157; *see* SAA at 225.  Here, Labor determined that
the El Paso plant did not meet either of the first two criteria and, thus, it issued a negative
determination.  *See id.*  By the proposed Second Amended Complaint, Plaintiffs request judicial
review of Labor's negative determination in this regard.  *See* proposed Second Am. Compl. ¶ 14
("Plaintiffs request this Court review Defendant DOL's . . . negative finding regarding
qualification as secondary firm.").  However, because Plaintiffs have not established that the
(continued...)

In late April, each Plaintiff received written notice of Labor's determination on the Application for Reconsideration. *See* Mot. Leave File ¶ 6 ("On or about April 25, 2002, the plaintiffs received a notice of negative determination regarding their request for reconsideration submitted [in] December . . . ."); *see also* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") App. at 5–8 (letters from Labor to Plaintiffs of 05/01/02). Each of these letters stated:

> This is to advise you that the Department of Labor has issued a notice of negative determination regarding application for reconsideration with respect to the [Negative Determination]. Enclosed is a copy that will be published in the *Federal Register*.
>
> Interested parties have 60 days from the date this decision is published in the *Federal Register* to file for judicial review of the Department's negative determination. Petitions for judicial review must be filed with the U.S. Court of International Trade, 1 Federal Plaza, New York, New York . . . . Further information regarding procedures or instituting an action in the U.S. Court of International Trade may be obtained from the Office of the Clerk at the above address. The phone number for the clerk of the Court is (212) 264-7090.

Def.'s Mem. App. at 5–8. Labor published notice of the Negative Determination Regarding Application for Reconsideration in the Federal Register on May 17. *See* Connolly N. Am., El Paso, Tx., 67 Fed. Reg. 35,157 (Dep't Labor May 17, 2002) (notice of negative determination). Thus, by statute, Plaintiffs had sixty days—or until July 16, 2002—to commence an action for judicial review of the Negative Determination Regarding Application for Reconsideration. *See* 28 U.S.C. § 2636(d); 19 U.S.C. § 2395; 29 C.F.R. § 90.19(a); *see also* 29 C.F.R. § 90.36.

---

[5](...continued)
court has subject matter jurisdiction over the cause of action contained in the proposed Second Amended Complaint, *see infra* Part III, the court also finds that it does not have subject matter jurisdiction to review Labor's negative determination that the El Paso plant was not a secondarily impacted firm.

During this period, neither Plaintiffs nor their counsel sought to withdraw the Complaint and start an action contesting the Negative Determination Regarding Application for Reconsideration, or to amend the Complaint to include allegations with respect to the Negative Determination Regarding Application for Reconsideration.

On June 7, the Government, without objection, timely moved for an extension of time within which to answer the Complaint. *See* Def.'s Mot. Extension Time Answer Pls.' Compl. (June 7, 2002) ("[C]ounsel for plaintiffs [] has informed [the Government's counsel] that she does not object to our request for an extension of time."). In support of this motion the Government's counsel stated that she had

> experienced a delay in receiving plaintiffs' initial amended complaint . . . . The amended complaint was received through inter-office mail approximately the first week of May. . . .
>
> [Counsel for plaintiffs] has stated that she intends to file a second amended complaint in a week or two.

*Id*. Prior to the expiration of the time within which to file an answer, the Government, with Plaintiffs' consent, again moved for an extension of time. *See* Def.'s Mot. Extension Time Answer Pls.' Compl. (July 5, 2002). By this motion the Government requested an additional seven days—or until July 12—to file its answer. *Id.* On July 12, the Government did file the Answer.

Thereafter, by letter dated August 12—twenty-five days past the sixty provided for by statute for commencing an action for judicial review of the Negative Determination Regarding

Application for Reconsideration—Plaintiffs sought the Government's consent to amend the Complaint a second time. *See* Def.'s Mem. at 4. Plaintiffs sought this leave so that the Complaint would "include[] a reference to all of the administrative determinations and decisions, including the ones issued after the [filing of the Complaint on February 22]." Mot. Leave File ¶ 9. In other words, Plaintiffs sought to amend the Complaint to include judicial review of Labor's determination contained in the Negative Determination Regarding Application for Reconsideration. The Government, however, "declined to consent [to Plaintiffs' amendment] on the basis of untimeliness." Def.'s Mem. at 4.

Finally, the parties filed the motions that are now before the court. These motions were deemed to be filed on December 18, 2002.[6]

After reviewing the parties' moving papers, the court, on its own motion, issued an order inviting the parties to submit affidavits. *See* court Order of May 22, 2003 (the "Order"). In particular, the court sought clarification of the assertion found in Plaintiffs' response to the Government's Motion to Dismiss that "they did not know and were unable to confirm that the request for reconsideration [of the Negative Determination] was still pending." *See* Pls.' Resp. ¶ 3. In addition, by its Order the court asked Plaintiffs to "set forth any actions taken to ascertain the status of Plaintiffs' application for reconsideration of their petition . . . prior to the filing of

---

[6] The parties' papers were filed concurrently in conformance with the scheduling order. *See* Scheduling Order of Dec. 13, 2002 ¶ 1 ("Defendant will have until December 18, 2002, to file a Motion to Dismiss plaintiffs' case for lack of jurisdiction. Simultaneously, plaintiffs may file a motion to supplement their complaint and/or addressing their claimed bases of jurisdiction.").

the Complaint . . . ." Order at 1. In response, Plaintiffs stated the following:

> 5. I sought assistance from a workers' organization, Asociacion de Trabajadores Fronterizos, ATF (Border Workers Association). They helped two other co-workers and myself file a request for certification of eligibility to apply for NAFTA-TAA on September 18, 2001.
>
> 6. On or about November 25, 2001 I received a letter . . . by mail informing me that the Dept. of Labor had issued a denial of eligibility to apply for NAFTA-TAA assistance with a copy Negative Determination notice.
>
> 7. I took this letter and notice to the ATF office and asked whether this determination could be appealed. ATF prepared a request for reconsideration and on December 4, 2001 six other co-workers and I signed it. It was to be mailed to [Labor] by ATF.
>
> 8. I expected to receive an answer in the mail after a few weeks, but I did not receive anything. We went to the ATF office and let them know we had not received a response. ATF tried to find out the status but was unable to do so. We could not tell if the Dept of Labor had received our request because ATF did not send the request by certified mail.

Pls.' Resp. Ct's Order (July 7, 2003), Ex. A ¶¶ 5–8 (Aff. of Maricela Quintero) ("Quintero Affidavit"); *id.*, Ex. B ¶¶ 5–8 (Aff. of Sara Fernandez (identical language)). The court also asked the Government to "detail[ ] any government official's knowledge that Plaintiffs . . . were attempting to contact [Labor] to ascertain the status of the Application for Reconsideration and the day or dates of such contacts . . . ." Order at 1. In response, a Labor official stated she had circulated a message via electronic mail to various other officials soliciting the information requested by the court. The result of that electronic mailing was as follows:

> Neither the recipients of the email nor I recall receiving any inquiry from anyone requesting information about the petition or the request for administrative reconsideration filed on behalf of the workers of Connolly North America. Neither the recipients nor I

> recall providing any advice or recommendations to anyone concerning the requests for reconsideration filed on behalf of the workers of Connolly North America.

Def.'s Notice Filing Decl. Linda G. Poole (July 7, 2003), Attach. ¶ 4 ("Poole Aff."). The court also asked the Government to provide information as to "the reason or reasons why the United States Department of Labor did not promptly act upon the Application for Reconsideration within the fifteen day deadline set out by [regulation] . . . ." Order at 2. In response, Labor stated:

> The request for reconsideration of the negative determination for Connolly North America was dated and postmarked December 4, 2001. However, the Division of Trade Adjustment Assistance did not receive the request until February 6, 2002. It appears that this delay was due to the U.S. Department of Labor's policy instituted after the anthrax scare to send all mail to be irradiated before distribution to Departmental offices. Once the Division of Trade Adjustment Assistance received the request for reconsideration, any delay prior to the issuance [of the] negative determination regarding the request for reconsideration can be attributed to the increase in caseload and volume of reconsideration requests. As a result of this increase and insufficient staff to address the increased caseload, requests for reconsideration were processed in the order in which the requests were received.

Poole Aff. ¶ 5.

### DISCUSSION

It is incumbent upon a party seeking to invoke the court's subject matter jurisdiction to plead the requisite facts sufficient to prove that the court has jurisdiction over a cause of action. *Former Employees of AST Research, Inc. v. United States Dep't of Labor*, 25 CIT __, __, Slip Op. 01-150 at 4 (Dec. 20, 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178,

189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).  By

its motion, the Government presents several arguments why Plaintiffs have not satisfied their

burden.  The Government argues that: (1) Plaintiffs failed to properly exhaust their

administrative remedies prior to filing the Complaint seeking judicial review of the Negative

Determination[7]; (2) Plaintiffs' request for judicial review of the Negative Determination was time

barred[8]; and (3) Plaintiffs' request for judicial review of the Negative Determination Regarding

Application for Reconsideration by amending the Complaint was time barred.[9]  The court

examines each argument in turn.


I.          *Exhaustion of administrative remedies*

        The Government argues that, as to the Negative Determination, this court does not have

subject matter jurisdiction to review Labor's determination because "the 'exhaustion of

administrative remedies' doctrine bars [Plaintiffs'] action . . . ."  Def.'s. Mem. at 4; *see* 28 U.S.C.

§ 2637(d) ("In any civil action not specified in this section, the Court of International Trade shall,

where appropriate, require the exhaustion of administrative remedies.").  In other words, the

---

[7]        In other words, by seeking to commence an action with respect to the Negative Determination prior to the issuance of an administrative determination with respect to the Application for Reconsideration, Plaintiffs failed to exhaust their administrative remedies and, thus, their suit was prematurely filed.

[8]        Under this theory Plaintiffs should have filed a complaint making allegations with respect to the Negative Determination no later than sixty days after publication of the notice of that determination in the Federal Register on November 30, 2001.

[9]        Under this theory any amendment to the Complaint making allegations with regard to the Negative Determination Regarding Application for Reconsideration should have been filed no later than sixty days after the publication of the notice of that determination in the Federal Register on May 17, 2002.

Government is arguing that the court does not have subject matter jurisdiction to review the allegations set out in the Complaint, which relate solely to the Negative Determination, due to the sequence of events in this action. Specifically, the Government is arguing that Plaintiffs, having invoked the administrative review process by mailing the Application for Reconsideration to Labor on December 4, 2001, were bound to allow that process to run its full course even though (1) no determination was forthcoming within the fifteen day period following Labor's receipt of the application, and (2) even though the Negative Determination Regarding Application for Reconsideration was not issued until April 15, 2002.

In response, Plaintiffs state that

> there are " . . . three broad sets of circumstances in which the interests of the individuals weigh heavily against requiring administrative exhaustion: when the requirement occasions undue prejudice to subsequent assertion of a court action; where the agency is not empowered to grant effective relief; and when there are clear indicia of agency bias or taint."

Pls.' Mem. at 3–4 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146–148 (1992) (quotation as in Pl.'s Mem.)). Plaintiffs argue that "[t]he first exception is clearly applicable. If Defendant's delays . . . are condoned and Labor's position accepted, Plaintiffs' rights to judicial review would not only be prejudiced, but also effectively eliminated." *Id.* at 4.

By statute, this court is vested with jurisdiction to review Labor's "final determinations" in NAFTA-TAA cases. *See* 28 U.S.C. § 1581(d)(1); 19 U.S.C. § 2395(a); 29 C.F.R. § 90.19(a). Although the term "final determination" is not defined by statute, Commerce's regulations

provide, *inter alia*, that

> [u]pon reaching a determination that an application for
> reconsideration does not meet the requirements of [29 C.F.R. §
> 90.18(c)], the certifying officer shall issue a negative determination
> regarding the application and shall promptly publish in the
> FEDERAL REGISTER a summary of the determination including
> the reasons therefore.  Such a summary shall constitute a Notice of
> Negative Determination Regarding Application for
> Reconsideration.  A determination issued pursuant to this
> paragraph shall constitute a final determination for purposes of
> judicial review pursuant to . . . 19 U.S.C. 2395, and [29 C.F.R.] §
> 90.19(a).

29 C.F.R. § 90.18(e); *see AST*, 25 CIT at __, Slip Op. 01-150 at 5 (citing 29 C.F.R. § 90.18(e);

29 C.F.R. § 90.19(a)) ("A 'final determination' includes a negative determination on an

application for reconsideration.").  Thus, while the Negative Determination may have provided a

basis to invoke this court's jurisdiction had Plaintiffs not requested administrative

reconsideration, during the pendency of the requested review no final determination existed from

which to seek relief.  Plaintiffs nowhere present any argument or explanation as to why the

Negative Determination should provide a basis for jurisdiction at the time the Complaint was

filed on February 22, 2002.  Plaintiffs merely state that they "requested a reconsideration of

[Labor's] determination.  No further information or notices have been received from [Labor] in

response to Plaintiffs' request for reconsideration."  First Am. Compl. ¶¶ 10–11.  However,

because Plaintiffs had invoked the administrative process for reconsideration of the Negative

Determination on December 4, 2001, on February 22, 2002, there was no "final determination"

for the court to review.[10]

_____

        [10]        While the record shows that Labor took more than the fifteen days provided by
regulation to make a determination it cannot be said that as a result of the passage of time Labor
                                                                                  (continued...)

Furthermore, Plaintiffs fail adequately to explain how their "rights to judicial review would not only be prejudiced, but also effectively eliminated" by requiring the exhaustion of administrative remedies as to the Negative Determination. While there may well be hardships to Plaintiffs resulting from a delay in receiving benefits to which they might otherwise be entitled, it is difficult to see how exceeding the fifteen day time frame set out by the regulations translates into eliminating judicial review. Although much delayed, a final determination was, in fact, made and Plaintiffs received both actual and constructive notice of their right to judicial review of the matters contained in the Negative Determination Regarding Application for Reconsideration at that time.

---

[10](...continued)
lost the authority to make a determination with respect to the Application for Reconsideration. As the Government points out,

> [t]he failure to meet the fifteen day time requirement of 29 C.F.R. § 90.18(c) can be likened to the failure to meet the statutory time limit of sixty days to issue a final determination regarding certification of eligibility that is contained in 19 U.S.C. § 2273(a). Neither triggers judicial review if Labor, regardless of its best efforts, can not meet the time deadlines.

Def.'s Reply Pls.' Mot. Leave File Second Am. Compl. & Second Am. Compl. at 3 (citing *Kelly v. Sec'y Labor*, 812 F.2d 1378, 1380 n.3 (Fed. Cir. 1987); *Katunich v. Sec'y of Labor*, 8 CIT 156, 162, 594 F. Supp. 744, 749–50 (1984)); *see Nichimen Am., Inc. v. United States*, 13 CIT 683, 687, 719 F. Supp. 1106, 1109 (1989), *aff'd in part and rev'd in part on other grounds by Nichimen Am., Inc. v. United States*, 938 F.2d 1286 (Fed. Cir. 1991) (citing *Usery v.Whitin Mach. Works, Inc.*, 554 F.2d 498, 501 (1st Cir. 1977)) ("[T]he United States Court of Appeals for the First Circuit determined that nothing in the statutes covering trade adjustment assistance suggested that a time limitation upon the Secretary of Labor was designed to be jurisdictional and that absent clear indication that Congress intended such time limits to be strictly enforced, the court would refrain from doing so.").

II.      *Judicial review of the Negative Determination*

The Government next argues that this court would not have subject matter jurisdiction to conduct judicial review of the Negative Determination in any event, because Plaintiffs "challenged Labor's . . . [Negative Determination] [by filing the Complaint on February 22, 2002,] twenty-four days beyond the statutorily-prescribed sixty-day filing period.  Their complaint, therefore, should be dismissed for untimeliness."  Def.'s Mem. at 5 (citing 28 U.S.C. § 2636(d)).

For their, part Plaintiffs counter that Labor's delay in acting on their request for reconsideration should be taken into account.  Plaintiffs state that they

> waited for more than 50 days to receive a response or acknowledgement [sic] that the request for reconsideration would be investigated; that it would be acted upon, or that it was still pending.  When Plaintiffs consulted legal counsel, they did not know and *were unable to confirm* that the request for reconsideration was still pending.  Rather than allow more time to pass after Labor's official denial, they opted for appealing that denial to this Court and filed the original complaint on February 22, 2002.

Pls.' Resp. ¶ 3 (emphasis added).[11]  By their papers Plaintiffs appear to be arguing that the

---

[11]      By their Complaint Plaintiffs also state that there was "good cause for failing to appeal [the Negative Determination] within 60 days of notice in that the notice contains no information about their appeal rights and Plaintiffs were not represented by legal counsel at the time they received the notice of determination."  First Am. Compl. ¶ 12.  An examination of the copy of the Negative Determination Plaintiffs submitted in conjunction with the Complaint confirms that there is no information about what further course of action Plaintiffs could take as to their request for NAFTA-TAA benefits.  *See* First Am. Compl., Ex. B (copy of Neg. Determination sent to Marisela Quintero).  However, although Plaintiffs may not have been "represented by legal counsel" and may not have received actual notice of their "appeal rights" this is not to say that they were incapable of ascertaining what their rights were or did not, in fact,

(continued...)

doctrine of equitable tolling should apply to judicial review of the Negative Determination.

Specifically, Plaintiffs seem to contend that Labor's apparent inaction in making a determination

on the Application for Reconsideration, and the inquiries Plaintiffs made with respect thereto,

should provide a basis for extending their time to file a complaint contesting the Negative

Determination itself.

In general, "[t]he United States is immune from suit except as it consents to be sued."

*Former Employees of Quality Fabricating, Inc. v. United States Sec'y Labor*, 27 CIT __, __, 259

F. Supp. 2d 1282, 1285 (2003) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980);

*United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  By statute, the United States provides for

a civil cause of action to contest Labor's NAFTA-TAA determinations.  *See* 28 U.S.C. §

1581(d)(1).  Furthermore, "[t]he timeliness of actions brought under 28 U.S.C. § 1581(d)(1) is

governed by 28 U.S.C. § 2636."  *AST*, 25 CIT at __, Slip Op. 01-150 at 4–5 (citing 28 U.S.C. §

2636 (1994); *Former Employees of ITT v. Sec'y Labor*, 12 CIT 823, 824 (1988); *Former*

*Employees of Badger Coal Co. v. United States*, 10 CIT 693, 694, 649 F. Supp. 818, 819 (1986)).

The statute provides that "[a] civil action contesting a final determination of the Secretary of

Labor under [19 U.S.C. § 2273] . . . is barred unless commenced in accordance with the rules of

the Court of International Trade within sixty days after the date of notice of such determination.

28 U.S.C. § 2636(d), *quoted in AST*, 25 CIT at __, Slip Op. 01-150 at 5; *see also* 19 U.S.C. §

---

[11](...continued)
do so.  Specifically, Plaintiffs state that, having received notice of Labor's determination in late November 2001, they "took this letter and notice to the ATF office and asked whether this determination could be appealed.  ATF prepared a request for reconsideration and on December 4, 2001 six other co-workers and I signed it."  Quintero Aff. ¶ 7.

2395(a); 29 C.F.R. § 90.19(a)).  In general, this statutory sixty-day time period is strictly

construed.  *See Former Employees of Malapai Res. Co. v. Sec'y Labor*, 15 CIT 25, 27 (1990)

(citing *Kelley*, 812 F.2d at 1378); *Former Employees of Rocky Mountain Region Office of Terra

Res., Inc., v. United States*, 13 CIT 427, 429, 713 F. Supp. 1433, 1435 (1989) (citing *Kelley*, 812

F.2d at 1378); *Former Employees of Suttle Apparatus Corp. v. United States Sec'y of Labor*, 13

CIT 511, 512 (1989) (citing *Kelley*, 812 F.2d at 1378); *Former Employees of ITT v. Sec'y Labor*,

12 CIT 823, 824 (1988)).  However, this Court has held that the doctrine of equitable tolling

applies to trade adjustment benefits cases.  *See Quality Fabricating*, 27 CIT at __, 259 F. Supp.

2d at 1285 (citing *Former Employees of Siemens Info. Communication Networks, Inc. v. Sec'y

Labor*, 24 CIT 1201, 1204, 120 F. Supp. 2d 1107, 1113–14 (2000)).  This Court has stated,

however, that "[e]quitable tolling is not available where the plaintiff failed to exercise due

diligence," *Siemens*, 24 CIT at 1208, 120 F. Supp. 2d at 1114 (citing *Irwin v. Dep't Veterans

Affairs*, 498 U.S. 89, 96 (1990)), and "[w]hether a plaintiff has acted with due diligence is a fact-

specific inquiry, guided by reference to the hypothetical reasonable person."  *Id.* (citing *Dodds v.

Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993); *Valerde v. Stinson*, 224 F.3d 129, 134 & n.4

(2d Cir. 2000)).


        Here, the court cannot find that Plaintiffs have sustained their burden of proof that the

court has subject matter jurisdiction to conduct judicial review of the Negative Determination

through the action of equitable tolling.  Specifically, neither Plaintiffs nor their counsel allege

that they actually contacted Labor about the status of the reconsideration of the Negative

Determination or that Labor did, in fact, make any representations to them about the status of the

Application for Reconsideration.  Plaintiffs merely state that they "went to the ATF office and let

them know we had not received a response.  ATF tried to find out the status but was unable to do

so.  We could not tell if the Dept of Labor had received our request because ATF did not send the

request by certified mail."  Quintero Aff. ¶ 8[12]; *see also* Poole Aff. ¶ 4 ("Neither the recipients of

the email nor I recall receiving any inquiry from anyone requesting information about the petition

or the request for administrative reconsideration filed on behalf of [Plaintiffs].  Neither the

recipients nor I recall providing any advice or recommendations to anyone concerning the request

for reconsideration filed on behalf of [Plaintiffs].").  Furthermore, Plaintiffs point to no colorable

action on the part of Labor that "induced" them to file the Complaint after the deadline for

contesting the Negative Determination passed.  *See Irwin*, 498 U.S. at 96[13]; *Quality Fabricating*,

27 CIT at __, 259 F. Supp. 2d at 1285 (citing *Irwin*, 498 U.S. at 95–96) ("The Supreme Court in

---

[12]       There is no indication that ATF is affiliated with any federal, state, or local government.  *See, e.g.*, Internet homepage of Asociación de Trabajadores Fronterizos, *available at* www.atfelpaso.org.

[13]       In fuller context, the Supreme Court in *Irwin* stated:

> [A]n examination of the cases in which we have applied the equitable tolling doctrine as between private litigants affords petitioner little help.  Federal courts have typically extended equitable relief only sparingly.  We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin*, 498 U.S. at 96 (footnotes omitted; citing *Baldwin County Welcome Ctr. v. Brown*, 416 U.S. 147, 151 (1984)).

*Irwin* stated that equitable tolling was generally allowed where a complainant was 'induced' by his adversary's misconduct into allowing the filing deadline to pass."); *Siemens*, 24 CIT at 1208, 120 F. Supp. 2d at 1114 (citing *Irwin*, 498 U.S. at 96). In order for the doctrine of equitable tolling to attach, Plaintiffs must make a reasonable effort to ascertain the status of the proceeding, and here they have not done so. *See Irwin*, 498 U.S. at 96. Therefore, in addition to Plaintiffs' actions with respect to contesting the Negative Determination being barred by the doctrine of exhaustion of administrative remedies, they are also unable to claim that their Complaint was timely filed through the action of equitable tolling. As such, Plaintiffs have not sustained their burden of proof that the court has subject matter jurisdiction for judicial review of the Negative Determination.

III.     *Judicial review of the Negative Determination Regarding Application for Reconsideration*

Finally, the Government argues that "Labor's [Negative Determination Regarding Application for Reconsideration] became the appealable decision and [Plaintiffs] did not propose challenging that decision until twenty-seven days beyond the statutorily-prescribed sixty-day time period . . . . Thus, any challenge to the [Negative Determination Regarding Application for Reconsideration] would . . . be untimely." Def.'s Mem. at 5.

Plaintiffs contend that

> [i]t is manifestly unfair for Defendant Secretary to raise the issue of timeliness against Plaintiffs' appeal of the [Negative Determination Regarding Application for Reconsideration] because Defendant was in a position to control the triggering of the timing

requirements. After Plaintiffs filed their lawsuit on February 22, 2001 [sic], Defendant was in a position of accepting or not, Plaintiffs' request for reconsideration. If Labor had not accepted the request for reconsideration, the initial determination would be in effect and Plaintiffs would be invoking good cause . . . . Moreover, after the reconsideration determination was issued on April 15, 2001 [sic] Defendant waited 8 months, or well after the 60 day appeal window to file their motion to dismiss.

Pls.' Resp. at 3 (footnote omitted). Again, Plaintiffs have not sustained their burden. First, it was Plaintiffs themselves who continued the administrative process by filing the Application for Reconsideration, which Labor was required to accept and act on. 29 C.F.R. § 90.18(a) ("Any worker . . . aggrieved by a determination issued pursuant to [19 U.S.C. § 2331] and [29 C.F.R.] § . . . 90.16(f) . . . may file an application for reconsideration of the determination with the Office of Trade Adjustment Assistance, Employment and Training Administration, U.S. Department of Labor . . . ."). Second, Plaintiffs were given adequate notice and an opportunity to request judicial review of the Negative Determination Regarding Application for Reconsideration. Specifically, the record shows that: (1) Labor did come to a determination on the Application for Reconsideration, *see* Negative Determination Regarding Application for Reconsideration; (2) Plaintiffs received actual written notice from Labor that they had sixty days from the date of publication of notice of the Negative Determination Regarding Application for Reconsideration in the Federal Register within which to file for judicial review of that determination, *see* Mot. Leave File ¶ 6; Def.'s Mem. App. at 5–8; (3) Labor published notice of its determination in the Federal Register on May 17, 2002, thus beginning the sixty-day period within which to file for judicial review of the Negative Determination Regarding Application for Reconsideration, *see* Connolly N. Am., El Paso, Tx., 67 Fed. Reg. at 35,157; (4) at the time the notice of Negative

Determination Regarding Application for Reconsideration was published in the Federal Register

Plaintiffs were represented by counsel, *see* Pls.' Resp. ¶ 3 at 2; Mot. Appear *Pro Hac Vice*; (5)

the statutory sixty-day period for filing for judicial review of the Negative Determination

Regarding Application for Reconsideration expired on July 16, 2002, *see* 28 U.S.C. § 2636(d);

and (6) Plaintiffs sought the Government's consent to file the proposed Second Amended

Complaint on August 12, 2002. Thus, Plaintiffs were provided with actual notice that the

Negative Determination Regarding Application for Reconsideration was to be published in the

Federal Register and that they had sixty days after publication within which to request judicial

review, yet they failed to do so. As such, Plaintiffs have not sustained their burden of proof as to

the court's subject matter jurisdiction for judicial review of the Negative Determination

Regarding Application for Reconsideration.[14]


CONCLUSION

Because Plaintiffs have not sustained their burden of proof that the court has subject

matter jurisdiction for judicial review of the Negative Determination, and because Plaintiffs have

---

[14] Although Plaintiffs seem to generally indicate that the doctrine of equitable tolling may be appropriate as to the Negative Determination Regarding Application for Reconsideration, *see* Pls.' Resp. at 4 ("Another possibility would be for the Court to grant leave to file the Second Amended Complaint and to consider that it was timely filed by tolling the 60 day requirement."), they make no argument as to how equitable tolling would be applicable to that determination. Indeed, Plaintiffs were apparently prepared to file their proposed Second Amended Complaint in advance of the expiration of the sixty-day time period, *see* Def.'s Mot. Extension Time Answer Pls.' Compl. (June 7, 2002) (stating Plaintiffs indicated that they would file the proposed Second Amended Complaint "in a week or two."), but present no further argument with respect to their satisfying the requirements of due diligence or any argument that they were induced by Labor into seeking consent to amend that document twenty-seven days past the expiration of the deadline.

not sustained their burden of proof that the court has subject matter jurisdiction for judicial

review of the Negative Determination Regarding Application for Reconsideration, the court

hereby grants the Government's motion to dismiss this action and denies Plaintiffs' motion for

leave to file a Second Amended Complaint.  Judgment shall enter accordingly.


                                               _____

                                                        Richard K. Eaton

Dated:  September 17, 2003
        New York, New York