**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COOK INLET REGION, INC.,
          *Plaintiff-Appellee,*

v.

ROBERT W. RUDE; HAROLD
RUDOLPH,
          *Defendants-Appellants.*

No. 11-35252

D.C. No.
3:09-cv-00256-RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
June 25, 2012—Anchorage, Alaska

Filed August 20, 2012

Before: Alfred T. Goodwin, William A. Fletcher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Frederick William Triem, Law Offices of Fred W. Triem, Petersburg, Alaska, for the appellants.

Jahna M. Lindemuth, Dorsey & Whitney LLP, Anchorage, Alaska, William D. Temko, Munger, Tolles & Olson LLP, Los Angeles, California, for the appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

Plaintiff-Appellee Cook Inlet Region, Inc. ("CIRI") is an Alaska Native Regional Corporation formed under the Alaska Native Claims Settlement Act ("ANCSA"). Defendants-Appellants Robert W. Rude and Harold F. Rudolph are shareholders of CIRI and former members of CIRI's Board of Directors.

In 2009, Plaintiff CIRI filed suit against Defendants, alleging that they had violated ANCSA and Alaska law. The district court held that it had federal question jurisdiction over the ANCSA claims and supplemental jurisdiction over the state-law claims. On appeal, Defendants challenge the court's holding that it had subject matter jurisdiction over the ANCSA claims. We affirm the district court.

## I. Background

Congress enacted ANCSA in 1971, two years after the discovery of oil in Prudhoe Bay. Alaska Native Claims Settlement Act, Pub. Law No. 92-203, 8 Stat. 688 (1971) (codified as amended at 43 U.S.C. §§ 1601-1629h); *see also* Martha Hirschfield, Note, *The Alaska Native Claims Settlement Act: Tribal Sovereignty and the Corporate Form*, 101 Yale L.J. 1331, 1335-36 (1992) ("Oil companies eager to exploit Alaska's natural resources were unwilling to begin development until title to the land had been quieted."). Under ANCSA, all Native claims to Alaskan land based on aboriginal use and occupancy were extinguished, and Native Alaskans were granted monetary compensation and title to forty million acres of land. *See* John F. Walsh, Note, *Settling the Alaska Native Claims Settlement Act*, 38 Stan. L. Rev. 227, 227 (1985).

ANCSA transferred title of the settlement land to twelve regional corporations and numerous village corporations cre-

ated by the Act. 43 U.S.C. §§ 1606-07. Under ANCSA, only Native Alaskans could be shareholders in these corporations for the first twenty years of their existence. This restriction on alienation was designed to ensure that Native Alaskan lands would not be sold at low prices as soon as title cleared. § 1606(h)(1) (1982); *see also* Walsh, 38 Stan. L. Rev. at 232-33 (discussing reasons for alienability restriction).

In 1990 and 1991, as the twenty-year restriction neared its end, Congress amended ANCSA to broaden restrictions on the transfer of corporate stock. *See* Little Bighorn Battlefield National Monument, Pub. L. No. 102-201, § 301, 105 Stat. 1631, 1633 (1991); Alaska Native Claims Settlement Act, Amendment, Pub. L. No. 101-378, § 301, 104 Stat. 468, 471-72 (1990). Under current law, shareholders in regional corporations established under ANCSA cannot sell or otherwise transfer their stock except under limited circumstances. 43 U.S.C. § 1606(h)(1)(B)-(C).

Lifting ANCSA's alienability restrictions on stock requires an amendment to the regional corporation's articles of incorporation. *See* § 1629c(b). ANCSA provides two mechanisms by which these restrictions can be lifted. One of them is a shareholder vote taken at the request of a shareholder petition. § 1629c(b)(I)(B)(ii).

In 2009, Defendants solicited shareholder signatures for two petitions. The first petition sought a vote to lift the alienability restrictions. The second petition sought to convene a special shareholder meeting to consider six advisory resolutions concerning dividends, elections, financial reporting, voting rights, and compensation of senior management. The petitions suggested that Plaintiff's board of directors and senior management were mismanaging the corporation. Defendants sent four mailers soliciting signatures for the petitions.

Plaintiff filed suit, alleging two claims under ANCSA and two claims under Alaska law. Plaintiff moved for summary

judgment on all claims. Defendants did not oppose the motion. The district court granted summary judgment to Plaintiff on all claims. Defendants filed a motion for relief from judgment, arguing that the court lacked federal-question subject matter jurisdiction. They also argued that the court erred in granting summary judgment on the second of Plaintiff's two ANCSA claims. The district court concluded that it had subject matter jurisdiction. However, it changed its mind on the merits of the second of the two ANCSA claims and ruled against Plaintiff on this claim.

After entry of final judgment, Defendants appealed, challenging only the jurisdictional ruling.

## II.   Jurisdiction and Standard of Review

We have appellate jurisdiction under 28 U.S.C. § 1291. We review de novo district court determinations of subject matter jurisdiction. *Puri v. Gonzales*, 464 F.3d 1038, 1040 (9th Cir. 2006).

## III.   Discussion

Plaintiff alleged two claims under ANCSA. The first claim alleged that defendants violated 43 U.S.C. § 1629b(c). This section permits the holders of 25 percent of the voting power of a Native corporation to petition the board of directors to lift alienability restrictions. The section provides that Alaska law governing the solicitation of proxies "shall govern solicitation of signatures for a petition," with exceptions not applicable here. § 1629b(c)(1)(B). Plaintiff alleged that defendants' solicitation materials for the petitions contained false and materially misleading statements, in violation of Alaska law that has been incorporated into § 1629b(c). *See* Alaska Stat. § 45.55.160.

The second claim alleged that defendants violated 43 U.S.C. §§ 1629b(b)(2)(A) and 1629c(b)(2). These sections

require that certain information be disclosed in petitions to lift alienability restrictions. These sections do not incorporate any Alaska law.

**[1]** The general federal question jurisdiction statute, 28 U.S.C. § 1331, grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "A case arise[es] under federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (internal quotation marks omitted). We conclude that the district court had federal question subject matter jurisdiction over Plaintiff's two ANCSA claims because "federal law creates the cause of action" in both claims. *Id.* at 690.

Defendants make four arguments why there is no federal question jurisdiction over Plaintiff's first claim. First, they argue that Plaintiff's claim under § 1629b(c)(1)(B) "does not allege any serious dispute over the validity, construction or effect[ ] of the 'federalized' state law . . . that requires the experience and uniformity" of a federal forum. Second, they argue that federal question jurisdiction over the first claim would disrupt the proper federal-state balance. Third, they argue that the claim does not raise a substantial federal question. Fourth, they argue that Congress' failure to create an explicit cause of action to challenge the solicitation of signatures indicates that it did not intend to grant federal jurisdiction over claims arising under the provision.

**[2]** Defendants' first and second arguments conflate the sometimes difficult jurisdictional question posed when federal law is embedded in a state-law claim with the much more straightforward question posed when state law is embedded in a federal-law claim. There is federal question jurisdiction over

a state-law claim only if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). By contrast, there is federal question jurisdiction over a federal-law claim simply by virtue of its being a claim brought under federal law, whether or not it incorporates state law.

**[3]** Plaintiff's first claim required the district court to apply Alaska law governing proxy solicitations to determine the legality of Defendants' shareholder petitions under ANCSA. But Plaintiff's claim was not brought as a state-law claim. Rather, Plaintiff brought a federal law claim under a provision of ANCSA that incorporated state law. Plaintiff did not bring, and indeed could not have brought, a claim directly under Alaska law because the relevant provision of Alaska law governs proxy solicitations rather than shareholder petitions. *See* Alaska Stat. § 45.55.160 (prohibiting "untrue statement[s] of material fact" in documents filed under proceedings in Chapter 55 of the Alaska Securities Act).

Defendants' third and fourth arguments are essentially the same as their argument that there is no federal question jurisdiction over Plaintiff's second claim. That argument is that both ANCSA claims fail on the merits, and that there is therefore no federal question jurisdiction over them.

**[4]** Defendants' argument fails because there is subject matter jurisdiction over federal-law claims unless they are "obviously frivolous." *Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 814 (9th Cir. 2002) (internal quotation marks omitted). It is hard to show frivolousness. There is federal question jurisdiction unless the federal claim is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for*

*a Better Env't*, 523 U.S. 83, 98 (1988) (internal quotations omitted). "Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits." *Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone*, 197 F.3d 1003, 1008 (9th Cir. 1999).

**[5]** Neither of Plaintiff's ANCSA claims was frivolous. Defendants can hardly contend that Plaintiff's first claim was frivolous, given that the district court found Defendants liable on that claim. The district court eventually concluded that Plaintiff's second claim failed on the merits, but that claim was not "insubstantial" or "implausible."

**[6]** Defendants make a final argument, applicable to both ANCSA claims. They contend that ANCSA itself limits federal jurisdiction over claims brought under it. Section 1601(f) states that "no provision of this chapter shall be construed to constitute a jurisdictional act, to confer jurisdiction to sue, nor grant implied consent to Natives to sue the United States or any of its officers with respect to the claims extinguished by the operation of the chapter." 43 U.S.C. § 1601(f). Defendants have misread this section. It limits litigation challenging the elimination of Native Alaskan land claims under ANCSA, but it does not limit § 1331 federal question jurisdiction over other claims brought under ANCSA.

### Conclusion

**[7]** We hold that there is federal question jurisdiction under § 1331 over Plaintiff's ANCSA claims.

**AFFIRMED.** .