**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                              )
JOHN DANIELS,                 )
                              )
          Plaintiff,          )
                              )
     v.                       )
                              )    Civ. Action No. 14-1667 (EGS)
                              )
CHUGACH GOVERNMENT SERVICES,   )
INC.                          )
                              )
          Defendant.          )
_____)


**MEMORANDUM OPINON**

Plaintiff John Daniels ("Mr. Daniels") is a middle-aged man from Liberia, West Africa. Am. Compl. ¶ 4. A permanent resident of Maryland, Mr. Daniels worked for Defendant Chugach Government Services ("Chugach") as a Systems Administrator from 2009 until 2011. *Id.* ¶ 4. In the fall of 2011, Chugach reorganized and Mr. Daniels was laid off. *Id.* ¶ 5. The position held by Mr. Daniels was combined with the position held by Mr. Daniels' middle-aged Ethiopian colleague. *Id.* Mr. Daniels interviewed for the new position, but a younger Caucasian male was hired instead. *Id.* ¶ 6. Mr. Daniels trained the new hire. *Id.* ¶ 10. After one month, the new hired was dismissed for poor performance. *Id.* ¶ 11. Mr. Daniels served as Acting Lead Systems Administrator for approximately four months. *Id.* ¶ 12. Mr. Daniels was never invited to apply for the permanent position, which was awarded

1

to a younger African American candidate in March 2012. *Id.* ¶ 10. Based on these events, Mr. Daniels alleges that Chugach discriminated against him based on his national origin, age and race. *Id.* ¶¶ 10-13. Chugach moves to dismiss Mr. Daniels' Amended Complaint for failure to state a claim. Def.'s Mot. Dismiss, Docket No. 14. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, Defendant's Motion is GRANTED in part and DENIED in part.

## I.  BACKGROUND

### A. Chugach Government Services

Chugach is a government contractor based in Alaska. Am. Compl. ¶ 3. Mr. Daniels was employed at Chugach's Washington, D.C. office. *Id.* At the time of the events alleged by Mr. Daniels, Chugach was a wholly owned subsidiary of Chugach Alaska Corporation, an Alaska Native Corporation created pursuant to the terms of the Alaska Native Claim Settlement Act ("ANCSA"). Def. Mem. Supp., Docket No. 14 at 7. The Alaska Native Settlement Claim Act of 1971 extinguished all Native claims to Alaskan land based on aboriginal use. C*ook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1129 (9th Cir. 2012). Native Alaskans were compensated monetarily and with title to forty million acres of land. *Id.* ANCSA transferred title of the settlement land to twelve regional corporations, including the

2

Chugach Alaska Corporation, and other entities created by the Act. *Id.; see also United States v. Atl. Richfield Co.*, 435 F. Supp. 1009, 1020-21 (D. Alaska 1977) *aff'd*, 612 F.2d 1132 (9th Cir. 1980) ("The intent of Congress in the Settlement Act was to settle the claims of Alaska Natives and to compensate them without deciding the difficult and disputed question of the existence and extent of aboriginal title to Alaska lands.").

## B. Mr. Daniels' Employment at Chugach

Mr. Daniels was employed by Chugach's Washington, D.C. office as an IT professional. Am. Compl. ¶ 4. Mr. Daniels' employment with Chugach began in 2009 as a Systems Administrator. *Id.* At this time, Mr. Daniels was in his mid-fifties. The Lead Systems Administrator was an Ethiopian male in his sixties. *Id.* In 2011, Chugach announced a reorganization, including the consolidation of Mr. Daniels' position with the Lead Systems Administrator position. *Id.* ¶ 5. Mr. Daniels and his Ethiopian colleague applied for the new position, but Chugach hired a younger Caucasian male. *Id.* ¶ 6. Mr. Daniels alleges that the new hire did not possess the relevant education or work experience requirements that were posted in the job description. *Id.* ¶ 7.

Chugach asked Mr. Daniels' to work in a temporary capacity to assist the Caucasian male's transition into the newly-created senior IT position. *Id.* ¶ 10. After one month, the new hire was

3

dismissed from his duties due to behavioral and performance issues. *Id.* ¶ 11. Chugach asked Mr. Daniels to serve as Acting Senior IT Administrator. *Id.* Mr. Daniels served in this capacity from approximately November 2011 to February 2012. *Id.* ¶ 12. In early March, 2012, Mr. Daniels received a letter informing him that his term as Acting Senior IT Administrator was over. *Id.* Mr. Daniels alleges that he was not invited to apply for the permanent position. *Id.* The person hired for the permanent position was a "much younger African-American male, who unlike Mr. Daniels or his former supervisor, had no direct African ancestry." *Id.* ¶ 13. Chugach invited Mr. Daniels to work as a Substitute Instructor, but with few hours and only minimum wage, Mr. Daniels could not support his family and sought work at Walmart. *Id.* ¶ 14.

### C. Mr. Daniels' Office of Federal Contract Compliance Program Complaint.

On May 30, 2012, Mr. Daniels filed a complaint with the Office of Federal Contract Compliance Program ("OFCCP"). *Id.* ¶ 15. Although the OFCCP findings are not attached to Mr. Daniels' Complaint, he alleges OFFCP concluded that Chugach violated Executive Order 11236 by "hiring the first Caucasian candidate over Mr. Daniels, a more qualified candidate, when the first candidate did not meet the minimum requirements of Senior IT

4

Administrator." *Id.*[1] Chugach offered Mr. Daniels $2,287.20 in back pay, an offer rejected by Mr. Daniels as "entirely unsatisfactory." *Id.* Mr. Daniels requested a right-to-sue letter from OFCCP and now alleges racial discrimination under Section 1981 (Count I), national origin discrimination under Title VII (Count II), and age discrimination under the Age Discrimination in Employment Act (Count III). *Id.* ¶¶ 16-18. Mr. Daniels seeks over $700,000.00 in damages, plus pre-judgment and post-judgment interest.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The pleading must contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The pleading standard does not require detailed factual allegations, but should be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Naked assertions without factual enhancements or formulaic recitations of the elements of

---

[1] Executive Order 11236 prohibits government contractors from discriminating against employees on the basis of race, color, religion, sex, sexual orientation, gender identity, or national origin. *See* Executive Action 11236, available at http://www.dol.gov/ofccp/regs/statutes/eo11246.htm.

a cause of action will not suffice. *Id*. Rather, to survive a motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. Plausibility entails that the plaintiff has pled factual content that is not merely consistent with liability but allows the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*.

In considering a 12(b)(6) motion, the Court should liberally view the complaint in the plaintiff's favor, accepting all factual allegations as true, and giving the plaintiff the benefit of all inferences that can be drawn therefrom. *Redding v. Edwards*, 569 F. Supp. 2d 129, 131 (D.D.C. 2008) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## III. ANALYSIS

### A. Mr. Daniels states a claim for race discrimination under Section 1981.

Chugach argues that Mr. Daniels § 1981 claim for race discrimination fails because it is (1) a national origin claim filed under the pretense of race; (2) time barred under a three-year statute of limitations; and (3) barred based on federal immunity because Chugach is an instrumentality of the federal government. Def.'s Mem. Supp. at 9-14. Mr. Daniels acknowledges that national origin and race claims are distinct, but maintains that he has adequately pled a race discrimination claim under §

1981 because "Chugach was trying to rid its staff of Black Africans, who present a different culture and heritage from those of the unqualified Caucasian candidate Chugach hired——and then fired——before hiring an African American without informing plaintiff of the existence of the reposting of the position." Pl.'s Mem. Opp. at 5. Mr. Daniels also asserts that a four-year statute of limitations applies and contends that Chugach does not qualify as an instrumentality of the federal government. *Id.* at 2-5.

### 1. Mr. Daniels has pled adequate facts to maintain a claim for race discrimination under § 1981.

Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts" and protects classes of persons from intentional discrimination based on their ancestry or ethnic characteristics. 42 U.S.C. § 1981(a); *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (defining race as used in § 1981 as including ancestry and ethnicity claims). To establish a claim under § 1981, a plaintiff must show that (1) he is a member of a racial minority group; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination pertained to one of the activities enumerated in the statute. *Dickerson v. District of Columbia,* 806 F. Supp. 2d 116, 119 (D.D.C. 2011). A successful Section 1981 claim alleges

7

discrimination based on ancestry or ethnic characteristics, not country of origin. *Nyunt v. Tomlinson*, 543 F. Supp. 2d 25, 35 (D.D.C. 2008) ("Race and national origin are 'ideologically distinct categories.'"); *see also* BARBARA T. LINDEMANN, ET AL., EMPLOYMENT DISCRIMINATION LAW, 6-3, Equal Employment Opportunity Committee Section of Labor and Employment law American Bar Association, 5th ed., V1 (2012) ("Although ancestry can fall within the purview of § 1981, national origin does not.").

The Supreme Court has "refused to narrowly define the concept of race." *Khair v. Campbell Soup Co.*, 893 F. Supp. 316 (D.N.J. 1995). As discussed in *St. Francis College*,

> § 1981, "at a minimum," reaches discrimination against an individual "because he or she is genetically part of an ethnically and physiognomically distinctive group of *homo sapiens.*"

481 U.S. 604 at 613 (1987). Here, Mr. Daniels alleges that Chugach sought to "rid its IT department of Black African employees" and "eliminate him due to his black African heritage and ancestry." Compl. ¶ 16. Mr. Daniels alleges that his Ethiopian colleague's position was also terminated through Chugach's reorganization. Am. Compl. ¶ 10. Mr. Daniels also identifies the individuals hired to fill the newly created position as a Caucasian male and an African-American male. Am. Compl. ¶ 11-13. Finally, Mr. Daniels asserts that the OFCCP concluded that Chugach violated Executive Order 11236, which

8

prohibits discrimination based on *inter alia*, race and color, when it hired the Caucasian male instead of Mr. Daniels because the Caucasian male "did not meet the minimum requirements of the Senior IT Administrator job description." *Id.* ¶ 15.

"While there may be some overlap between claims based on national origin and claims based on protected status under Section 1981, any potential overlap does not disqualify a Plaintiff from going forward under Section 1981." *Uzoukwu v. Metropolitan Washington Council of Governments, et al.*, 27 F. Supp. 3d 62, 67 (D.D.C. 2014). The allegation that Chugach hired a white male who did not meet the minimum job requirements is sufficient to state a plausible claim for relief under § 1981. *See id.* (holding that a Nigerian-American's claim of race discrimination under § 1981 should be permitted based on alleged incidents where her white colleagues were treated more favorably). In short, a liberal view of Mr. Daniels' complaint, accepting all factual allegations as true and giving him the benefit of all inferences that can be drawn therefrom, Mr. Daniels has sufficiently stated a claim for racial discrimination under § 1981.

### 2. A four-year statute of limitations applies to Mr. Daniels' § 1981 claim.

Chugach also argues that Mr. Daniels' § 1981 claim is barred by a three-year statute of limitation period. Def.'s Mem.

9

Supp. at 9-10. In *Jones v. R.R. Donnelley & Sons Co.*, the Supreme Court held that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990——and therefore is governed by § 1658's 4 year-statute of limitations——if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." 541 U.S. 369, 382 (2004). The Civil Rights Act of 1991 expanded the scope of § 1981 claims to include the prohibition of racial discrimination in the making and enforcing of contracts. 42 U.S.C. § 1981 (a); *see also Hamilton v. District of Columbia*, 852 F. Supp.2d 139, 144 (D.D.C. 2012). Thus, a four-year statute of limitations applies to Mr. Daniels' claims in this case. Mr. Daniels' claim was filed on October 6, 2014, and therefore falls within the four-year statute of limitations.

### 3. Chugach is not an instrumentality of the federal government.

Finally, Chugach argues that because Mr. Daniels brought suit against "Chugach Government Services, Inc. – Potomac Job Corps Center," his § 1981 claim is barred because the Federal Jobs Corps Center operates under the color of federal law and is therefore immune from suit. Def.'s Mem. Supp. at 13. Mr. Daniels insists that Chugach is not an instrumentality of the federal government, nor was it acting under the color of federal law. Pl.'s Mem. Opp. at 3-4.

Section 1981(c) provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Chugach notes that the federal Job Corps Program was created by Congress and is implemented by the U.S. Department of Labor ("DOL"). Def.'s Mem. Supp. at 13. Chugach argues that the length and detail of documents governing Job Corp "demonstrate the high degree of control that the DOL exercises over federal Job Corp Centers." *Id.*

Chugach's immunity under the color of federal law argument goes too far. As noted by Mr. Daniels, the authority cited by Chugach is misplaced, as all cases cited by Chugach involve an actual federal government agency. *See, e.g. DynaLantic Corp. v. U.S. Dept. of Defense*, 855 F. Supp.2d 237, 291 (D.D.C. 2012) (dismissing § 1981 claim because Defendant Department of Defense is a federal agency, and thus operating under the color of federal law); *Williams v. Glickman*, 936 F. Supp. 1 at 3 (D.D.C. 1996) (dismissing § 1981 claim based on federal farm loan applications); *see also Sindram v. Fox*, 374 Fed. Appx. 302, 304 (3d Cir. 2010) (dismissing § 1981 claim because Defendant Department of Education is a federal agency, and thus operating under the color of federal law). Chugach has cited to no authority, and the Court is aware of none, that has deemed a private government contractor as an instrumentality of

11

the federal government or otherwise operating under the color of federal law. Accordingly, Chugach is not immune from suit under § 1981.

For all of these reasons, Chugach's Motion to dismiss Daniels' § 1981 claim is DENIED.

### B. Mr. Daniels' Title VII national origin claim fails because Chugach is exempt from the definition of "employer" under Title VII.

Chugach argues that Mr. Daniels' claim of discrimination based on national origin fails because Chugach was not an "employer" as required under Title VII at the time of the events alleged. Def.'s Mem. Supp. at 4. Rather, Chugach maintains that it was a wholly owned subsidiary of the Chugach Native Association, which qualifies as an Alaska Native Corporation ("ANC") and is therefore exempt from the definition of employer under Title VII. *Id.* Mr. Daniels contends Chugach has not established that it was a wholly owned subsidiary during at the time of the events in question, deeming Chugach's motion as to Count II premature. Pl.'s Mem. Opp., Docket No. 15 at 1-2.

Title VII makes it an unlawful employment practice for "an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). Based on 43 U.S.C. § 1626(g), Courts have routinely held that ANCs are exempt from the definition of employer under Title VII. *Fox v.*

12

*Portico Reality Services Office*, 739 F. Supp.2d 912, 919 (E.D. Va. 2010) (holding that 43 U.S.C. § 1626(g) exempts Native Corporations and direct subsidiaries, but not indirect subsidiaries, from the definition of employer under Title VII). 43 U.S.C. § 1626(g) states:

> For the purposes of implementation of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000a et seq.], a Native Corporation and corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity shall be within the class of entities excluded from the definition of "employer" by section 701(b)(1) of Public Law 88-352 (78 Stat. 253), as amended [42 U.S.C.A. 2000e(b)(1)], or successor statues.

43 U.S.C. § 1626(g). This statute was passed with the intent to "facilitate Alaska Native Shareholder employment programs by resolving any uncertainty as to the applicability of the Civil Rights Act of 1964 to certain business enterprises in which Native Corporations participate." *Fox*, 739 F. Supp. 2d 912 at 919 (citing Sen. Rep. No. 100-201, at 39 (1987)).

In support of its Motion, Chugach submitted to the Court its 2011 and 2013 Biennial Reports, which confirm that ANC Chugach Alaska Corporation owned 100 percent of Chugach from 2009 to 2012, the period relevant to his matter. Def.'s Reply Mem., Docket No. 16, Ex. A. Based on this documentation, the Court is satisfied that Chugach was a wholly owned subsidiary at the time of the alleged discrimination. Chugach is therefore

13

exempt from the definition of employer under Title VII and Mr. Daniels' claim for discrimination based on national origin fails. *Pratt v. Chenega Integrated Systems*, Case No. 07-1573, 2007 WL 2177335 at *3 (N.D. Cal. July 27, 2007) (holding that documents showing entity was at least 25 percent owned by a Native Corporation was sufficient to grant motion to dismiss based on entities exemption from Title VII's definition of employer); *see also Aleman v. Chugach Support Services, Inc.*, 485 F.3d 206, 211 (4th Cir. 2007) (affirming that direct subsidiary of Alaska Native Corporation was exempt from definition of employer under Title VII, but did not extend to claims under Section 1981); *Thomas v. Choctaw Management/Service Enterprise*, 313 F.3d 910, 911 (5th Cir. 2002) (affirming District Court's granting of Defendant's Motion to Dismiss because, *inter alia*, Indian Tribes are exempt from the definition of employer under Title VII).

For all of these reasons, Chugach's Motion to Dismiss Mr. Daniel's Title VII national origin discrimination claim is GRANTED.

### D. Mr. Daniels' Age Discrimination claim fails because he did not properly exhaust his administrative remedies through the EEOC.

Chugach argues that Mr. Daniels' age discrimination claim is barred as a matter of law because he failed to exhaust his administrative remedies through the EEOC. Def.'s Mem. Supp. at

14

8. Mr. Daniels maintains that his OFCCD complaint satisfies exhaustion of his age discrimination claim. Pl.'s Mem. Opp. at 6.

Before bringing suit under the ADEA, plaintiffs must exhaust their administrative remedies. 29 U.S.C. § 626(d)(1). Doing so requires filing a charge with the EEOC within 180 days after the alleged unlawful practice occurred. *Id.; see also Washington v. Washington Metropolitan Area Transit Authority*, 160 F.3d 750, 752 (D.C. Cir. 1998). Here, Mr. Daniels does not dispute that he failed to file a charge with the EEOC; rather, he argues that his OFCCD complaint is sufficient to exhaust all administrative remedies related to his age discrimination claim. Pl.'s Mem. Opp. at 6.

In support of his argument, Mr. Daniels points to a November 2011 Memorandum of Understanding ("MOU") between the Equal Employment Opportunity Commission (EEOC) and OFCCP, which states that "all complaints/charges of employment discrimination filed with OFCCP alleging a Title VII basis (race, color, religion, sex, national origin, or retaliation) shall be received as complaints/charges simultaneously dual-filed under Title VII." EEOC, 76 Fed. Reg. 71029-32 (Nov. 16, 2011). Mr. Daniels acknowledges that discrimination on the basis of age is not mentioned in the MOU, but argues that "it makes little sense for a complainant to have the burden of filing two separate

15

complaints with the EEOC for age discrimination and with OFCCP for Title VII violations when the discrimination alleged arises from the same operative actions undertaken by the government contractor." Pl.'s Mem. Opp. at 6. Mr. Daniels also represents that the EEOC directed him to assert all of his claims with the OFCCP. *Id.* at 7. Finally, in large part conceding that his age discrimination claim should have been exhausted through the EEOC, Mr. Daniels requests that the Court equitably toll the time necessary to allow Mr. Daniels to properly exhaust his age discrimination claim through the EEOC. *Id.*

Mr. Daniels cannot exhaust his age discrimination through the OFCCP for three principle reasons. First, the plain language of the MOU does not mention age discrimination claims. EEOC, 76 Fed. Reg. 71029-32 (Nov. 16, 2011). Second, the MOU applies to discrimination claims *alleging a Title VII basis*. *Id.* (emphasis added). Here, Mr. Daniels alleges his age discrimination claim under ADEA. Am. Compl., Count III ("VIOLATION OF ADEA FOR DISCRIMINATION ON THE BASIS OF AGE"). Third, case law supports the conclusion that Mr. Daniels' OFCCP complaint does not satisfy the requirement of filing a charge with the EEOC. *Granger v. Aaron's Inc.*, Case No. 09-1634, 2010 WL 2464832, at *4 (W.D. La June 14, 2010) aff'd, 636 F.3d 708 (5th Cir. 2011) (holding that a complaint filed with the OFCCP, over which the OFCCP has no jurisdiction, cannot be considered a dual-filed

16

complaint under the provisions of an MOU); *see also Meckes v. Reynolds Metals Co.*, 604 F. Supp. 598, 601 (N.D. Ala. 1985) (holding that because OFCCP was never a proper place to file any kind of age discrimination claim, plaintiff's OFCCP charge of age discrimination was not a 'filing' of an ADEA charge and could not constitute a 'joint' filing with EEOC under the Memorandum).

Mr. Daniels argument that equitable tolling should be applied so that he may timely file an age discrimination complaint with the EEOC is equally without merit. The courts equitable tolling power "will be exercised only in extraordinary and carefully circumscribed instances." *Washington v. Washington Metro*, 160 F.3d 750, 752 (D.C. Cir. 1998). Equitable tolling does not extend to "what is at best, a garden variety of excusable neglect." *Id.* (citing *Irwin v. Dep't. of Veteran Affairs*, 498 U.S. 89, 96 (1990)).

Here, the statement Mr. Daniels' submitted with his OFCCP complaint does not mention an allegation of age discrimination. Def.'s Mem. Supp., Ex. 4. Only in his complaint, filed two years after the alleged discriminatory events, does Mr. Daniels allege an age discrimination claim. Compl., Docket No. 1 at 8. These facts strongly suggest that Mr. Daniels did not timely seek to exhaust is administrative remedies on his age discrimination claim under the ADEA. Moreover, although Mr. Daniels claims that

17

the EEOC advised him to file all charges with the OFCCP, Mr. Daniels does not allege that Chugach engaged in any misconduct designed to mislead Mr. Daniels about when his claim should be filed, or otherwise induce him to miss the filing deadline. *See Irwin*, 498 U.S. 89 at 96 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.").

For all of these reasons, Chugach's Motion to Dismiss Mr. Daniels' age discrimination claim under the ADEA is GRANTED.

## IV.  CONCLUSION

After consideration of the motion, the response and reply thereto, the applicable law, and the entire record, for the reasons discussed in this Memorandum, Defendant's Motion is GRANTED in part and DENIED in part. An appropriate order accompanies this Memorandum Opinion.


**Signed: Emmet G. Sullivan**
        **United States District Court Judge**
        **March 7, 2016**

18